Bobby RIGGS and M–Helicopters of
Tennessee, Inc., Plaintiffs–
Appellees,

v.

Charles W. BURSON, Tennessee Attorney
General and Reporter, Carl Johnson,
Commissioner of the Tennessee Depart-
ment of Transportation, Defendants–Ap-
pellants.

Supreme Court of Tennessee,
at Knoxville.

March 10, 1997.

Rehearing Denied April 7, 1997.

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Barry Turner, Deputy Attorney General, Nashville, for Defendants–Appellants.

Steven E. Marshall, Marshall & Delius, Sevierville, for Plaintiffs–Appellees.

**OPINION**

ANDERSON, Justice.

We granted this appeal to decide whether a state statute [1] prohibiting the use of land for a heliport within nine miles of the boundary of a national park is constitutional and, if so, whether it is preempted by federal law.

The trial court held the statute was constitutional and was a regulation of the use of land and therefore was not preempted by the Federal Aviation Act. The court, therefore, dismissed the plaintiffs' action to enjoin enforcement of the statute. The Court of Appeals reversed, deciding that it must accept as true the complaint's legal conclusions as to preemption and constitutionality, and remanded the case for an evidentiary hearing.

For the reasons that follow, we conclude that the state statute does not violate due process or equal protection under the Tennessee or United States Constitutions; does not suspend general law in violation of the Tennessee Constitution; and is not preempted by federal law. We have further determined that in addressing the motion to dismiss, the trial court was not required to accept as true the plaintiffs' asserted legal conclusions that the law lacked a rational basis and was preempted.

Accordingly, the judgment of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

---

1. Tenn.Code Ann. § 42–8–101 through –105 (1993).

## BACKGROUND

The plaintiffs, Bobby Riggs and M–Helicopters of Tennessee, Inc., own and operate a heliport in Sevier County, Tennessee, from which they launch helicopters which carry tourists to, over, and from the Great Smoky Mountains National Park. The heliport is located within nine miles of the boundary of the national park.

In early 1992, the Tennessee legislature enacted Tenn.Code Ann. § 42–8–101, *et seq.*, which prohibited the helicopter touring operations of the plaintiffs after July 1, 1994. In June of 1994, the plaintiffs filed a declaratory action in the Sevier County Circuit Court challenging the constitutionality of the statute, which provides in part:

**42–8–102. Certain land not to be used as heliport—Heliports on such land.**—(a) *Land in a tourist resort county within nine (9) miles of the boundary of a national park established pursuant to 16 U.S.C. § 403 cannot be used as a heliport.*

. . . .

**42–8–103. Violations—Heliport deemed nuisance—Abatement, removal, conformity.**—Notwithstanding the provisions of § 13–7–208 or any other law to the contrary, a heliport operating as of April 23, 1992, that is in violation of § 42–8–102(a) is declared a public nuisance and shall be abated, removed or changed to conform with this chapter by July 1, 1994. . . .

(Emphasis added).

The plaintiffs alleged that the statute violated due process and equal protection under the United States and Tennessee Constitutions; that it suspended general law in violation of article XI, section 8 of the Tennessee Constitution; and that it was preempted by the Federal Aviation Act. The plaintiffs also argued that they were permitted to maintain a non-conforming use pursuant to Tenn.Code Ann. § 13–7–208(b). The defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted.

After reviewing the statute and its preamble, and hearing arguments from both parties, the trial court granted the defendants' motion to dismiss the complaint. The trial court found that the statute did not violate the Tennessee or United States Constitutions; that it was a regulation of the use of land that was not preempted by federal law; and that the plaintiffs were not entitled to relief under Tenn.Code Ann. § 13–7–208(b) as a non-conforming use.

On appeal, the Court of Appeals apparently accepted the plaintiffs' conclusory legal allegations as true and held:

[t]he allegations of the complaint set forth the elements for claims of preemption, due process and equal protection, and an unconstitutional suspension of general law. Our decision is not to be construed to say the statutes are free or not free of constitutional defects. We are remanding the case for the parties to be afforded the opportunity to introduce any evidence which is material and pertinent in considering the validity of the statute.

We granted the defendants' appeal to address the constitutionality of the statute, the federal preemption question, and to clarify the standard to be applied by a court in addressing a motion to dismiss a complaint which contains conclusory assertions that a statute is unconstitutional.

## MOTION TO DISMISS

■ The first question we must address is the standard to be applied by a court in addressing a motion to dismiss a complaint which contains legal conclusions. We begin our analysis by examining the purpose of a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion pursuant to Tenn. R.Civ.P. 12.02(6) tests the legal sufficiency of a complaint; it admits the truth of all relevant and material allegations, "but asserts that such *facts* do not constitute a cause of action as a matter of law." *Pursell v. First American National Bank et al.,* 937 S.W.2d 838 (Tenn.1996)(emphasis added).

■ In ruling on such a motion, courts must construe the allegations in the plaintiff's favor and accept allegations of fact as true. However, the inferences to be drawn

from the facts or the legal conclusions set forth in a complaint are not required to be taken as true. *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn.App.1992).

■ The plaintiffs' allegations that the statute violated due process and equal protection under the United States and Tennessee Constitutions and suspended general law in violation of the Tennessee Constitution were legal conclusions that should not have been taken as true. As recognized by both parties, these constitutional issues required a determination of whether the legislature had a rational basis for passing the statute. In this regard, if any reasonable justification for the law may be conceived, it must be upheld by the courts. *State v. Tester,* 879 S.W.2d 823, 830 (Tenn.1994); *see Newton v. Cox,* 878 S.W.2d 105, 110 (Tenn.), *cert. denied,* 513 U.S. 869, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

Here, the trial court correctly applied this analysis in the context of the defendant's motion to dismiss under Tenn.R.Civ.P. 12.02(6). In *Lilly v. Smith,* 790 S.W.2d 539 (Tenn.App.1990), for example, the plaintiff raised an equal protection challenge to the State's grade policy for admission into state nursing schools. The trial court granted the defendant's motion to dismiss under Rule 12.02(6). The Court of Appeals upheld the dismissal upon finding that there was a "rational relationship between the admissions requirement and legitimate state policy."

■ Likewise, the plaintiffs' assertion that the statute was preempted by the Federal Aviation Act was a legal conclusion that should not have been accepted as true. Whether a federal law expressly or implicitly preempts a state law requires an investigation of Congress's intent in passing federal legislation. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 515–16, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Here, both parties argued their interpretations of the Federal Aviation Act and offered supporting legal authority for whether the Act expressly or implicitly preempted the statute. The

trial court properly addressed the preemption issue in the context of the motion to dismiss, without an evidentiary hearing. *See e.g., Broyde v. Gotham Tower, Inc.,* 13 F.3d 994 (6th Cir.), *cert. denied,* 511 U.S. 1128, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994).

Accordingly, we conclude that the Court of Appeals erred in accepting the legal conclusions in the plaintiffs' complaint as true and in remanding the case for an evidentiary hearing, and that the trial court acted correctly in addressing all the legal issues in the motion to dismiss.

### PREEMPTION

■ The preemption doctrine stems from the Supremacy Clause of the United States Constitution: "[t]he Constitution and laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const., art. VI, cl. 2. A state law which conflicts with federal law, therefore, is preempted or "without effect." *See Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981).

The plaintiffs charged that Tenn.Code Ann. § 42–8–101, *et seq.,* is aimed at the "flight of aircraft and aircraft noise" and is therefore preempted by the Federal Aviation Act. *See* 49 U.S.C. § 40101–41901 (Supp. 1996).[2] The defendants maintained, and the trial court found, that the statute is not preempted because it relates to the use of land and not the flight of aircraft. The Court of Appeals, however, ruled that the elements of a preemption claim had been alleged and that an evidentiary hearing was required to determine whether the statute is directed at aircraft noise.

■ Consideration of preemption issues under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

**2.** The Federal Aviation Act of 1958, as amended by the Noise Control Act of 1972, was formerly

codified at 49 U.S.C. §§ 1301–1357.

The purpose of Congress in enacting a federal law is, therefore, the "ultimate touchstone" of preemption analysis. *Retail Clerks Intern. Ass'n v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963). The intent of Congress may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). However, where there is no express preemption provision in a federal statute, a state law is implicitly preempted if that law actually conflicts with the federal law, *see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), or if the federal law so thoroughly occupies the legislative field "as to make reasonable the inference that Congress left no room for the States to supplement it." *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *see also Watson v. Cleveland Chair Co.,* 789 S.W.2d 538, 542 (Tenn.1989) (discussing parameters of preemption doctrine).

▇ The Federal Aviation Act reflects congressional intent to place exclusive authority for regulating the airspace above the United States with the Federal Aviation Administration. 49 U.S.C. § 40103(b)(1).

Applying the foregoing principles, the plaintiffs concede that the Federal Aviation Act does not expressly preempt Tenn.Code Ann. § 42–8–101, *et seq.,* but instead claim that the law was implicitly preempted under the rule established in *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). There, the City of Burbank adopted an ordinance making it unlawful for jet aircraft to take off from the Hollywood–Burbank airport between the hours of 11:00 p.m. and 7:00 a.m. The lower federal courts found that the curfew sought to regulate aircraft noise by restricting flights and held that the ordinance was preempted by federal law. *Id.,* 411 U.S. at 626, 93 S.Ct. at 1856.

The Supreme Court agreed. The Court said that the Federal Aviation Act gave the Federal Aviation Administration control over the regulation of aircraft noise, and that it and other federal agencies had "comprehensively regulated" in this area. Thus, the Court concluded that the "pervasive nature of the scheme of federal regulation of aircraft noise" preempted the City of Burbank's curfew, which had sought to regulate noise by restricting flights. *Id.,* 411 U.S. at 633–634, 93 S.Ct. at 1859–1860.

In claiming that the statute in question is aimed at the regulation of "the flight of aircraft and aircraft noise," the plaintiffs rely in great measure on the implied preemption holding in *City of Burbank, supra.* The defendants, however, maintain that *City of Burbank* does not extend to state laws which, like this statute, regulate the use of land and not the flight or noise of aircraft. In this respect, the defendants note the limitation of *City of Burbank* as expressed by the dissenting justices:

A local governing body could ... use its traditional police power to prevent the establishment of a new airport or the expansion of an existing one within its territorial jurisdiction by declining to grant the necessary zoning for such a facility. *Even though the local government's decision in each case were motivated entirely because of the noise associated with airports, I do not read the Court's opinion as indicating that such action would be prohibited by the Supremacy Clause merely because the Federal Government has undertaken the responsibility for some aspects of aircraft noise control.* Yet if this may be done, the Court's opinion surely does not satisfactorily explain why a local governing body may not enact a far less 'intrusive' ordinance such as that of the city of Burbank.

*Id.,* 411 U.S. at 653, 93 S.Ct. at 1869 (Rehnquist, J., dissenting) (emphasis added).

Other jurisdictions have elaborated on this point and have limited the application of *City of Burbank.* In our own Sixth Circuit, in *Gustafson v. City of Lake Angelus,* 76 F.3d 778 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996), the plaintiff claimed that ordinances which prohibited the operation of seaplanes on a lake near his home were preempted by the Federal Aviation Act. The district court agreed

and granted summary judgment in favor of the plaintiff on the basis of *City of Burbank*. The Sixth Circuit reversed:

> [I]n the present case, an examination of the Federal Aviation Act and regulations concerning seaplanes and aircraft landing sites indicates that the designation of plane landing sites is not pervasively regulated by federal law, but instead is a matter left primarily to local control. In contrast to the pervasive scheme of federal regulation of aircraft noise found in *Burbank*, we fail to identify any language in the Act, the regulations promulgated pursuant to the Act, or the legislative history of the Act, which by implication preempts enforcement of the City's ordinances....

*Id.*, 76 F.3d at 784 (emphasis added). Accordingly, the Sixth Circuit concluded that "there is a distinction between the regulation of the navigable airspace and the regulation of ground space to be used for aircraft landing sites." *Id.*, 76 F.3d at 789.

Similarly, in *Condor Corp. v. City of St. Paul*, 912 F.2d 215 (8th Cir.1990), when a request to use the property as a heliport for helicopter services was denied by the city, Condor Corporation challenged the restrictions as preempted under the Federal Aviation Act. The district court denied relief, and the Eighth Circuit Court of Appeals affirmed: "We see no conflict between a city's regulatory power over land use, and the federal regulation of airspace, and have found no case recognizing a conflict." *Id.*, 912 F.2d at 219. *See also Faux–Burhans v. County Com'rs of Frederick County*, 674 F.Supp. 1172 (D.Md.1987), *aff'd.*, 859 F.2d 149 (4th Cir.1988)(county restrictions on size and scope of private airfield not preempted).

In a state court case, *Garden State Farms, Inc. v. Bay*, 77 N.J. 439, 390 A.2d 1177 (1978), the plaintiff sought to construct a heliport on property located near "a heavily traveled thoroughfare, opposite a residential neighborhood." *Id.*, 390 A.2d at 1179. An ordinance was adopted prohibiting the use of land in the area for a heliport because the "general quality of life would be adversely affected by low-level air traffic with its concomitant increased noise, air pollution and automobile traffic and its anticipated distraction and anxiety to residents." *Id.*

The New Jersey Supreme Court held the ordinance was not preempted by the Federal Aviation Act. The Court noted that the Act did not "reach down to the level of the location of small, relatively isolated, privately owned helistops or heliports," and stressed that while "it is clear that state and local authority over the 'operation and navigation of aircraft' is supplanted by ... federal regulation, ... *significant local power over ground operation of aircraft remains visible.*" *Id.*, 390 A.2d at 1180–1181 (emphasis added).

Returning to this case, an analysis of the Tennessee statute and its preamble indicates that the law regulates the use of land and not the flight of aircraft or the use of airspace. The law restricts "land in a tourist resort county within nine miles of the boundary of a national park" from being "used as a heliport." Tenn.Code Ann. § 42–8–102(a). The preamble to the law reflects that the Legislature had several interests under consideration including the noise, disruption and safety risks caused by locating heliports near main roads and heavily populated areas. It is clear that the police powers of the Legislature include restricting use of property if it is reasonably related to the public health, safety, and welfare. *See Spencer–Sturla Co. v. City of Memphis*, 155 Tenn. 70, 83, 290 S.W. 608, 612 (1927). Our examination of the language of the statute indicates it is not expressly preempted by the Federal Aviation Act, and it does not establish a curfew or restrict flights in a manner that is implicitly preempted under the *City of Burbank* decision.

Our conclusion is shared by the Federal Aviation Administration, which stated in a letter offered in evidence by the defendants, that "the FAA has concluded that the statute as written is not preempted on its face by the express preemption provisions of section 105 of the Federal Aviation Act of 1958, as amended.... Likewise the statute is not preempted ... by implication under the holding of *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973)." We observe

that interpretations of statutes by administrative agencies are customarily given respect and accorded deference by courts. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

▮ Accordingly, we agree with the persuasive federal and state authority that has upheld laws which restrict the use of land for the operation of helicopters or other aircraft. The plaintiffs seek to distinguish these cases as involving restrictions on future uses, and not, as in this case, an existing use. This distinction, however, does not alter our conclusion. First, a land use law, if otherwise constitutional, may permissibly restrict or eliminate an existing use of land. *See* 101A C.J.S. *Zoning and Land Planning* § 157; *Rives v. City of Clarksville,* 618 S.W.2d 502, 508–509 (Tenn.App.1981)("a zoning ordinance that restricts a future use and one that requires existing uses to stop after a reasonable time is not a difference in kind, but one of degree"). Second, although the preemption analysis may have differed if the statute eliminated an existing use based solely on aircraft noise, *see Wright v. County of Winnebago,* 73 Ill.App.3d 337, 29 Ill.Dec. 347, 391 N.E.2d 772, 777 (1979), the law, as we have discussed, is related to numerous legislative interests. *See Gustafson,* 76 F.3d at 791; *Garden State Farms,* 390 A.2d at 1180–1181.

Accordingly, we hold that Tenn.Code Ann. § 42–8–101, *et seq.*, is not preempted by federal law under the Supremacy Clause of the United States Constitution. Having so held, we must now address whether the law withstands constitutional scrutiny.

### DUE PROCESS

The plaintiffs charge that the statute lacks a rational basis and violates due process under the Fourteenth Amendment to the United States Constitution and article I, section 8 of Tennessee Constitution. The defendants counter that the law is rationally related to the health, safety, and welfare of tourists and residents in the tourist resort counties. The defendants point to the preamble to the law which reflects the Legislature's concern with the rapid growth of tourism in the resort counties and the disruption and safety risks caused by locating heliports in heavily populated centers and near main roads.

▮ This Court has held that the "law of the land" provision of article I, section 8 of the Tennessee Constitution "is synonymous with the due process clause of the Fourteenth Amendment to the United States Constitution." *Newton v. Cox,* 878 S.W.2d at 110; *State ex rel. Anglin v. Mitchell,* 596 S.W.2d 779, 786 (Tenn.1980). Thus, unless a fundamental right is implicated, a statute comports with substantive due process if it bears "a reasonable relation to a proper legislative purpose" and is "neither arbitrary nor discriminatory." *Newton v. Cox,* 878 S.W.2d at 110.

Here, the parties recognize that the statute does not implicate a fundamental right, and that the "rational basis" analysis applies to the plaintiffs' due process challenge. *Id.* Thus, the question we must address is whether the statute is reasonably related to a legitimate legislative purpose.

▮ We begin our analysis with the presumption that an act of the General Assembly is constitutional. *See Petition of Burson,* 909 S.W.2d 768 (Tenn.1995); *Davis–Kidd Booksellers, Inc. v. McWherter,* 866 S.W.2d 520 (Tenn.1993). In evaluating a statute, we must indulge every presumption and resolve every doubt in favor of constitutionality. *Petition of Burson,* 909 S.W.2d at 775. We also recognize that the Legislature has the authority to enact laws for the public safety, comfort and welfare. *Spencer–Sturla Co. v. City of Memphis,* 155 Tenn. at 83, 290 S.W. at 612; *see also Fallin v. Knox County Bd. of Com'rs,* 656 S.W.2d 338 (Tenn.1983).

▮ The preamble to the statute reflects these legitimate legislative interests of public safety, comfort, and welfare. It notes that the growth of the tourist industry in the resort counties near the Great Smoky Mountains National Park has attracted heliport operations of the sort owned and operated by the plaintiffs. Moreover, it indicates that the location of these heliports near heavily populated areas and main roads has, in the Legislature's determination, disturbed the peace and enjoyment of tourists and residents, in-

terrupted enjoyment of the area by tourists, and created a safety risk to tourists and residents. The statute seeks to prevent this harm not by regulating where or when helicopters may fly, but by restricting where land may be used to locate heliports.

In *Gustafson, supra,* the Sixth Circuit addressed whether the ordinance prohibiting the operation of seaplanes on a lake survived due process scrutiny and determined that its review was limited to "whether the legislative action [was] rationally related to legitimate land use concerns." The court concluded that the city's concern with the "noise, danger, apprehension of danger, ... destruction of property values, and interference with other lawful uses ... fulfill[ed] the requirements of this test." *Id.,* 76 F.3d at 791.

Similarly, we conclude that the restriction on the location of heliports contained in this statute is reasonably related to the legitimate legislative interests of securing the public safety, comfort, and welfare. The plaintiffs' arguments that there is no evidence in the record to establish a genuine safety risk from helicopter operations, and that the law will increase any potential risk and disruption by forcing longer flights, do not establish that the statute is irrational. To the contrary, under the rational basis test, specific evidence is not necessary to show the relationship between the statute and its purpose. *See Newton v. Cox,* 878 S.W.2d at 110. Rather, this Court asks only whether the law is reasonably related to proper legislative interests. *Id.* We conclude that it is.

### EQUAL PROTECTION

This Court has said that "[b]oth the United States and Tennessee Constitutions guarantee to citizens the equal protection of the laws." *Brown v. Campbell County Bd. of Educ.,* 915 S.W.2d 407, 412 (Tenn.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1852, 134 L.Ed.2d 952 (1996). Article I, section 8 and article XI, section 8 of the Tennessee Constitution confer the same protections as the Fourteenth Amendment to the United States Constitution. *See Brown v. Campbell County Bd. of Educ.,* 915 S.W.2d at 413.

■■ The plaintiffs allege that the statute improperly classifies helicopter operations within nine miles of the Great Smoky Mountains National Park from all others in the state of Tennessee in violation of equal protection of the laws. They argue that "the failure of the statute is that it does not attempt to apply the legislature's concern for noise and safety to all the commercial heliports in the state." On the other hand, the defendants maintain that the statute's classification is reasonably related to a legitimate legislative interest and therefore valid.

■■ In *Tennessee Small School Systems v. McWherter,* 851 S.W.2d 139, 153 (Tenn. 1993), we said that "[t]he concept of equal protection espoused by the federal and of our state constitutions guarantees that 'all persons similarly circumstanced shall be treated alike.'" (quoting *F.S. Royster Guano Co. v. Commonwealth Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920)). Things which are different in fact or opinion are not required by either Constitution to be treated the same. *Tennessee Small School Systems,* 851 S.W.2d at 153 (citing, *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786). In this regard:

> The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States, and legislatures are given considerable latitude in determining what groups are different and what groups are the same.... In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest....

851 S.W.2d at 153 (citations omitted).

■■ We have consistently followed the framework developed by the United States Supreme Court, which, depending on the nature of the right asserted or a class of persons affected, applies one of three standards of scrutiny: (1) strict scrutiny, (2) heightened scrutiny, and (3) reduced scrutiny or the rational basis test. *Newton v. Cox,* 878 S.W.2d at 109. Strict scrutiny analysis is required "only when [a legislative] classification interferes with the exercise of a 'fundamental right' or operates to the peculiar disadvantage of a 'suspect class.'" *Id.*

■ Here, the parties agree that the statute does not interfere with a fundamental right nor does it involve a suspect class; thus, like the due process challenge, the equal protection analysis of this state statute involves the rational basis test. Under this standard, "[i]f some reasonable basis can be found for the classification [in the statute] or if any state of facts may reasonably be conceived to justify it, the classification will be upheld." *Tennessee Small School Systems v. McWherter*, 851 S.W.2d at 153; *Newton v. Cox*, 878 S.W.2d at 110. This standard, compared to the heightened or strict scrutiny, places upon those challenging a statute "the greatest burden of proof." *Brown v. Campbell County Bd. of Educ.*, 915 S.W.2d at 413.

As we have discussed, the statute restricts the location of heliports within nine miles of the Great Smoky Mountains Park in an effort to achieve legitimate interests related to the public safety, health, and welfare. The preamble to the statute indicates that the Great Smoky Mountains National Park is "an invaluable natural resource" which has attracted growing numbers of tourists and residents. It also states that locating heliports in the heavily populated areas and near main roads poses a "unique problem," as it creates a disruption and safety risk to tourists and residents. Although the plaintiffs contend that there is no evidence to support classifying helicopter operators within nine miles of the park differently from any others in Tennessee, such evidence is unnecessary; the relevant inquiry is whether there is a reasonably conceivable set of facts to justify the classification within the statute. We have concluded that there is such a set of facts which justifies the classification.

### SUSPENSION OF LAWS

Article XI, section 8 of the Tennessee Constitution provides:

General laws only to be passed. The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights privileges, [immunities] or exemptions other than such as may be by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

The plaintiffs charge that the statute suspended general law in violation of article XI, section 8 of the Constitution. Specifically, the plaintiffs argue that the law suspended Tenn.Code Ann. § 13–7–208(b), which provides for the continuation of non-conforming uses following the enactment of zoning ordinances, Tenn.Code Ann. § 42–2–211, which governs the licensing of airports, and the general "right to earn a livelihood."[3] The defendants maintain that the statute does not suspend a general law and, in any event, is rationally related to legitimate legislative interests.

■ Article XI, section 8 is implicated when a statute "contravene[s] some general law which has mandatory statewide application." *Civil Service Merit Board v. Burson*, 816 S.W.2d 725, 727 (Tenn.1991); *see Knox County ex rel. Kessel v. Lenoir City*, 837 S.W.2d 382 (Tenn.1992). If a statute does suspend a general law, article XI, section 8 is not violated unless it creates classifications which are capricious, unreasonable, or arbitrary. *Civil Service Merit Board*, 816 S.W.2d at 727. If any reason can be conceived to justify the classification, it will be upheld as reasonable. *Stalcup v. City of Gatlinburg*, 577 S.W.2d 439 (Tenn.1978).

■ We need not determine whether the provisions cited by the plaintiffs are laws with mandatory statewide application. As already discussed, article XI, section 8 is commonly cited as one of two provisions which guarantee equal protection of the law under the Tennessee Constitution. The analysis for determining whether a statute suspends a general law in violation of the Tennessee Constitution is similar to that for determining whether there is a rational basis

---

**3.** The only claim in the plaintiffs' complaint was that Tenn.Code Ann. § 42–8–101, *et seq.*, sus-   pended Tenn.Code Ann. § 13–7–208(b).

for a classification. As we have held, the statute, and the classification therein, is rationally related to several legitimate legislative interests. Thus, we conclude that it does not violate article XI, section 8 of the Tennessee Constitution.

### TENN. CODE ANN. § 13–7–208(b)

Finally, the plaintiffs argue that they have a statutory right to maintain their non-conforming use after the enactment of the statute. They rely on Tenn.Code Ann. § 13–7–208(b), which states:

> In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial, or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of land is undertaken by such industry or business.

The trial court held that the plaintiffs were not entitled to relief under this section and the Court of Appeals affirmed. The Court of Appeals held that the statutory provision was limited to municipal zoning ordinances and that, in any event, the provision was specifically addressed and rejected by the statute.

■ A basic principle of statutory construction is to ascertain and give effect to legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995). This means examining the language of a statute and applying its ordinary and plain meaning. *Id.* Moreover, we must presume that the Legislature knows of its prior enactments and knows of the existing state of the law at the time it passes legislation. *Wilson v. Johnson County*, 879 S.W.2d 807, 810 (Tenn.1994).

■ As noted by the Court of Appeals, the statute specifically excluded the provisions of Tenn.Code Ann. § 13–7–208(b). *See*

Tenn.Code Ann. § 42–8–103, which clearly states: "Notwithstanding the provisions of § 13–7–208 or any other law to the contrary...." The plain language of the statute provides that heliports which did not conform to the nine-mile restriction were to be eliminated within the time period set forth in the statute. Moreover, the terms of the statute specifically reject the notion that a non-conforming use could continue under any other provision of law. We conclude that the Legislature intended to exclude Tenn.Code Ann. § 13–7–208(b). It follows that the plaintiffs are not entitled to relief.

### CONCLUSION

For the foregoing reasons, we hold that Tenn.Code Ann. § 42–8–101, *et seq.*, does not violate either the United States or Tennessee Constitutions and that the trial court properly granted the defendants' motion to dismiss. The judgment of the Court of Appeals is reversed, and the judgment of the Sevier County Circuit Court is reinstated. Costs of the appeal are taxed to the plaintiffs.

BIRCH, C.J., and DROWOTA and REID, JJ., concur.