IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 15, 2010 Session

## ALICIA MATHES, ET AL. v. DRD KNOXVILLE MEDICAL CLINIC, ET AL.

### Direct Appeal from the Circuit Court for Knox County
No. 1-446-09      Dale C. Workman, Judge

_____

### No. E2010-01809-COA-R3-CV - Filed April 13, 2011

_____

This is an appeal from the trial court's grant of separate motions to dismiss for failure to state a claim upon which relief can be granted. The trial court determined that Appellants had failed to comply with the written notice and certificate of good faith requirements of the Tennessee Medical Malpractice Act, and had failed to state a claim for vicarious liability based on theories of agency or joint venture. We affirm in part, reverse in part, and remand, concluding that Appellants' claims of direct negligence do not sound in medical malpractice, but that Appellants failed to state a claim upon which relief can be granted with respect to vicarious liability based on agency or joint venture.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part, and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which, DAVID R. FARMER, J., and JOHN W. MCCLARTY, J., joined.

Christopher T. Cain, Knoxville, Tennessee, for the appellants, Alicia Mathes and Scott Mathes.

James G. O'Kane, Knoxville, Tennessee, for the appellees, DRD Knoxville Medical Clinic, Dr. Steven Ritchie, and DRD Knoxville Medical Clinic, Inc.

### OPINION

### I. Background Facts & Procedure

This is an appeal from the trial court's grant of separate motions to dismiss pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief can be granted. Thus, the following facts are drawn from the parties' respective pleadings.

On September 15, 2008, at approximately 7:15 a.m., Paul Davis and Alicia Mathes collided in an automobile accident in Knox County. Earlier that same day, Mr. Davis had been administered his daily dose of methadone at DRD Knoxville Medical Clinic, a drug rehabilitation center that provides treatment to patients with opiate addictions. The clinic treats its patients through counseling and dispensing methadone. Dr. Steven Ritchie was the medical director and an employee of the clinic, and part of his job was to oversee the administration of methadone to certain patients, including Mr. Davis.

On September 11, 2009, Mrs. Mathes, along with her husband, Scott Mathes (together "Plaintiffs" or "Appellants"), filed a complaint in the Circuit Court of Knox County. The complaint named as defendants DRD Knoxville Medical Clinic, DRD Knoxville Medical Clinic, Inc. (together "DRD" or the "Clinic"), Dr. Ritchie, and Mr. Davis. The complaint alleged negligence on the part of Mr. Davis, direct negligence on the part of DRD and Dr. Ritchie, and vicarious liability on the part of DRD under theories of agency and joint venture.

Specifically, the complaint averred that, on the morning of the automobile accident, DRD administered a daily dose of methadone to Mr. Davis, who was alleged to have been a long-time methadone user and patient of the Clinic. As alleged in the complaint, methadone, and long-term methadone use, can cause drowsiness, severe sedation, sleepiness, and blurred vision, which can render a person under its influence unable to perform complex tasks such as operating an automobile. The complaint further claimed that, contrary to Clinic policy, DRD provided Mr. Davis with his methadone dose before receiving payment. Consequently, after receiving his dose, Mr. Davis was allegedly instructed and allowed to leave the Clinic to obtain cash from an automated teller machine in order to make his payment.

The automobile accident allegedly occurred while Mr. Davis was retrieving funds to pay for his methadone dose. The complaint alleged that neither DRD nor Dr. Ritchie warned Mr. Davis of the side effects of methadone use or the danger of driving after receiving his dose. With regards to DRD and Dr. Ritchie, the complaint alleged that they owed a duty of care to Appellants, as their conduct in instructing and allowing Mr. Davis to drive while under the influence of methadone created a foreseeable "zone of risk" to innocent third parties.

Appellants alleged that DRD and Dr. Ritchie breached their duty in the following ways, as stated in the complaint:

> 1. Failing to determine if Davis was impaired before sending him for cash;

2.  Failing to warn Davis that he should not drive;

3.  Allowing Davis to leave while under the influence of methadone;

4.  Failing to properly monitor and/or supervise Davis while he was under the influence of methadone;

5. Failing to implement a proper procedure for monitoring and supervising patients (such as Davis) after they received methadone doses that would have prevented Davis from driving away from the Clinic while under the influence of methadone and subsequently causing an accident;

6.  Fail[ing] to intervene to prevent Davis from driving from the Clinic while under the influence of methadone and, instead, expressly directing and/or allowing Davis to do so; and,

7.  Failing to provide Davis with appropriate transportation for the purpose of him obtaining cash for payment of this debt to the Clinic.

Mrs. Mathes sought damages for her medical expenses, pain and suffering, loss of enjoyment, emotional distress, lost wages, vocational impairment, and permanent physical impairment. Mr. Mathes sought damages for loss of consortium. Appellants' complaint prayed for compensatory damages in the amount of four-million dollars.

DRD filed its answer on January 20, 2010, in which it admitted that Mr. Davis was a patient of the Clinic, and that, on September 8, 2008, at 6:35 a.m., DRD administered to Mr. Davis his daily methadone dose. DRD denied that it had administered the dose before receiving payment from Mr. Davis, and also denied that it had instructed or allowed Mr. Davis to leave the Clinic to obtain funds for payment. More generally, DRD's answer denied liability for negligence or vicarious liability under Appellants' theories of agency or joint venture. Dr. Ritchie's answer is not contained in the appellate record. On September, 28, 2010, Appellants obtained a default judgment against Mr. Davis, who is not a party to this appeal.

On February 17, 2010, DRD filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss, alleging that Appellants had failed to comply with the requirements of the Tennessee Medical Malpractice Act, specifically the written notice requirement of Tenn. Code Ann. § 29-26-121

and the certificate of good faith requirement of Tenn. Code Ann. § 29-26-122.[1] On March 5, 2010, Dr. Ritchie also filed a motion to dismiss adopting and incorporating by reference the memorandum supporting DRD's motion to dismiss. The remaining defendants, Dr. Ritchie and DRD (together "Appellees"), contended that Appellants' complaint sounded in medical malpractice, and not in ordinary negligence, and that Appellants had failed to comply with the requirements of the Medical Malpractice Act.

Appellants filed a response on March 9, 2010. In their response, Appellants admitted that they did not comply with the written notice requirement or the certificate of good faith requirement, but maintained that neither was required because their complaint sounded in ordinary negligence and not in medical malpractice.

The trial court held hearings on the motions to dismiss on March 12, 2010, and March 31, 2010. Following these hearings, the trial court dismissed all claims against Dr. Ritchie and the claims of direct negligence against DRD. The trial court found, by order entered July 6, 2010, that "Tennessee's Medical Malpractice Act applies to plaintiffs' claims against defendants." DRD's motion to dismiss did not address Appellants' claims for vicarious liability based on theories of agency and joint venture; therefore, those claims remained. On June 24, 2010, DRD filed a second motion to dismiss for failure to state a claim, moving the court to dismiss Appellants' agency and joint venture claims. Appellants filed their response on July 19, 2010. Following a hearing, on July 23, 2010, the trial court entered an order, on July 29, 2010, dismissing Appellants' remaining claims and making the judgment final pursuant to Tenn. R. Civ. P. 54.02.

## II. **Issues Presented**

Appellants timely appealed, raising the following issues for review, as restated from their brief:

(1) Whether the trial court erred in dismissing Appellants' direct negligence claims against DRD and Dr. Ritchie based upon a finding that the claims sounded in medical malpractice?

(2) Whether the trial court erred in dismissing Appellants' claims of vicarious liability against DRD based on agency or joint venture theories for failure to state a claim upon

---

[1]DRD's answer, filed January 20, 2010, also raised Tenn. R. Civ. P. 12.02(6) defenses as provided in Rule 12.

which relief can be granted?

### III. Standard of Review

A Tenn. R. Civ. P. 12.02(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. ***Lanier v. Rains***, 229 S.W.3d 656, 660 (Tenn. 2007). It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See **Riggs v. Burson***, 941 S.W.2d 44, 47 (Tenn. 1997). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to an examination of the complaint alone. *See **Wolcotts Fin. Servs., Inc. v. McReynolds***, 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See **Cornpropst v. Sloan***, 528 S.W.2d 188,190 (Tenn. 1975). In short, a Tenn. R. Civ. P. 12.02(6) motion to dismiss seeks only to determine whether the pleadings state a claim upon which relief can be granted, and such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. ***Bell ex rel. Snyder v. Icard***, 986 S.W.2d 550, 554 (Tenn. 1999). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See **Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934, 938 (Tenn. 1994). However, we are not required to accept as true factual inferences or conclusions of law. ***Riggs v. Burson***, 941 S.W.2d 44, 47-48 (Tenn. 1997). An appellate court should uphold the grant of a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief. ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). In reviewing a motion to dismiss, this Court is presented with matters of law, thus, our review is *de novo* with no presumption of correctness. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995).

### IV. Analysis

#### A. Medical Malpractice versus Ordinary Negligence

We must first determine whether Appellants' claims of direct negligence sound in ordinary negligence or medical malpractice. The issue is relevant here because, before proceeding in a malpractice case, a plaintiff must fulfill certain procedural requirements. Specifically, it is undisputed that Appellants provided neither written notice, as required by Tenn. Code Ann. § 29-26-121(a)(1)[2], nor a certificate of good faith, as required by Tenn.

---

[2]Tenn. Code Ann. § 29-26-121(a)(1) provides:

(continued...)

Code Ann. § 29-26-122.[3]  Failure to adhere to these procedural requirements may lead to dismissal of the complaint.  *See* Tenn. Code Ann. §§ 29-26-121(b); 29-26-122(a).  However, these procedural requirements do not apply to a claim for ordinary negligence.

"The distinction between medical malpractice and negligence is a subtle one, for medical malpractice is but a species of negligence and no rigid analytical line separates the two."  ***Gunter v. Lab. Corp. of Am.***, 121 S.W.3d 636, 639 (Tenn. 2003) (citations and internal quotations omitted).  The Tennessee Supreme Court recently addressed the standards for distinguishing between ordinary negligence and medical malpractice in ***Estate of French v. Stratford House***, No. E2008-00539-SC-R11-CV, __ S.W.3d __ , 2011 WL 238819 (Tenn. Jan. 26, 2011).

The elements of a claim for common law negligence include: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."  ***Estate of French***, 2011 WL 238819, at *5.  Medical malpractice claims, on the other hand, are specifically governed by the Tennessee Medical Malpractice Act, which essentially codified the elements of common law negligence.  ***Id.*** (citing ***Gunter***, 121 S.W.3d at 639).  Tenn. Code Ann. § 29-26-115 requires a plaintiff in a medical malpractice action to prove the following statutory elements: (1) the recognized standard of professional care in the specialty and locality in which the defendant practices; (2) that the defendant failed to act in accordance with the applicable standard of care; and (3) that as proximate result of the defendant's negligent act or omission, the claimant suffered an injury which otherwise would

---

[2](...continued)
> Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.

[3]Tenn. Code Ann. § 29-26-122(a) provides, in relevant part:

> In any medical malpractice action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause . . . .

not have occurred.  Tenn. Code Ann. § 29-26-115(a)[4]; *see also **Estate of French***, 2011 WL 238819, at *5.

Tennessee courts have embraced the following standard for distinguishing between ordinary negligence and medical malpractice:

> [W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable.  Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.

***Gunter***, 121 S.W.3d at 641 (citing ***Weiner v. Lenox Hill Hosp.***, 673 N.E.2d 914, 916 (N.Y. 1996)); *see also **Estate of French***, 2011 WL 238819, at *6.

Likewise, this Court has explained that:

> Medical malpractice cases typically involve a medical diagnosis, treatment or other scientific matters.  The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the

---

[4]Tenn. Code Ann. § 29-26-115(a) provides:

In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

trier of fact.

**Peete v. Shelby County Health Care Corp**., 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996) (quoting **Graniger v. Methodist Hosp. Healthcare Sys., Inc.**, No. 02A01-9309-CV-00201, 1994 WL 496781, at *3 (Tenn. Ct. App. Sept. 9, 1994)).

We note that this case does not involve the typical medical malpractice scenario in which a patient asserts claims against a healthcare provider for injuries arising out of medical treatment rendered to him or her. Rather, here, Appellants were never patients of Appellees, and merely assert claims that relate to medical treatment provided to a third party. Appellants argue that this case cannot involve medical malpractice where a physician-patient relationship never existed.

Appellants refer us to Tennessee cases in which it is stated that a physician-patient relationship is a necessary element of a medical malpractice action. *See, e.g.,* **Pittman v. Upjohn Co.**, 890 S.W.2d 425, 431 (Tenn. 1994) ("[t]he physician-patient relationship is an essential element of a cause of action for medical malpractice, but not for common law negligence"); **Bradshaw v. Daniel**, 854 S.W.2d 865, 870 (Tenn. 1993) ("[w]hile it is true that a physician-patient relationship is necessary to the maintenance of a medical malpractice action, it is not necessary for the maintenance of an action based on negligence"); **Estate of Doe v. Vanderbilt Univ., Inc.**, 958 S.W.2d 117, 122 (Tenn. Ct. App. 1997) ("a physician-patient relationship is a necessary element of a medical malpractice action").

Our Supreme Court discussed the historical underpinnings of the physician-patient requirement in **Kelley v. Middle Tennessee Emergency Physicians**, 133 S.W.3d 587, 591-93 (Tenn. 2004). From the Court's analysis in that case, it is clear that the requirement of a physician-patient relationship is, in essence, an analysis of duty. **Id.** at 593. A number of Tennessee Supreme Court cases have held that a medical provider may owe a duty of care to non-patient third parties for injuries caused by the medical provider's negligence if the harm which occurred was reasonably foreseeable. *See, e.g.,* **Estate of Amos v. Vanderbilt Univ.**, 62 S.W.3d 133, 138 (Tenn. 2001) (holding that a hospital owed a duty to warn a former patient of her possible exposure to the HIV virus and that the patient's husband could recover damages against the hospital); **Turner v. Jordan**, 957 S.W.2d 815, 818 (Tenn. 1997) (holding that a psychiatrist owed a duty of care to a hospital nurse to protect her from a dangerous, mentally ill patient); **Bradshaw v. Daniel**, 854 S.W.2d 865, 872-73 (Tenn. 1993) (holding that a physician of a patient suffering from Rocky Mountain Spotted Fever owed a duty of care to warn identifiable third persons in the patient's immediate family of their risk of contracting the disease); **Wharton Transp. Corp. v. Bridges**, 606 S.W.2d 521, 527 (Tenn. 1980) (holding that physician performing pre-employment physical examination of a truck driver owed a duty of care to a third party); *cf.* **Pittman v. Upjohn Co.**, 890 S.W.2d 425, 433-

34 (Tenn. 1994) (holding that physician did not owe a duty of care to non-patient where it was not reasonably foreseeable that non-patient would ingest medicine prescribed for the physician's patient).

We note that the question of what duty Appellees owed to Appellants was not an issue that was litigated or decided by the trial court. Consequently, we decline to address it on appeal. Nevertheless, we believe that the lack of a physician-patient relationship between Appellees and Appellants underscores the fact that Appellants' claims do not bear a substantial relationship to the rendition of medical treatment to Mr. Davis. *See* ***Estate of French***, 2011 WL 238819, at *6. By analyzing Appellants' complaint to ascertain the nature and substance of their claims, *see **id.*** at *7, it is clear that Appellants do not raise any issue related to the quality or effect of the medical treatment rendered by Appellees to Mr. Davis. Rather, Appellants allege fault on behalf of Appellees for instructing and allowing Mr. Davis to leave the Clinic while impaired by methadone in order to secure payment, and for failing to implement policies and procedures to prevent such an outcome.

As detailed above, Appellants specifically assert that Appellees: (1) failed to determine whether Mr. Davis was impaired before allowing him to leave the Clinic; (2) failed to warn Mr. Davis that he should not drive; (3) allowed Mr. Davis to leave while under the influence of methadone; (4) failed to properly monitor or supervise Mr. Davis while he was impaired; (5) failed to implement proper monitoring and supervising procedures for patients under the influence of methadone; (6) failed to intervene to prevent Mr. Davis from leaving the Clinic while impaired; and (7) failed to provide Mr. Davis with transportation for the purpose of securing payment. These are allegations sounding in ordinary negligence and do not bear a substantial relationship to the medical treatment of Mr. Davis.

The fact that this case involves health or medical entities does not, *ipso facto*, lead us to the conclusion that it sounds in medical malpractice. ***Estate of French***, 2011 238819, at *6; ***Gunter***, 121 S.W.3d at 640. From our review of the complaint, Appellants' allegations relate to Appellees' failure to warn, *see, e.g.,* ***Estate of Doe***, 958 S.W.2d at 122, and failure to implement proper procedures for the protection of third parties, *see, e.g.,* ***Turner v. Steriltek, Inc.***, No. M2006-01816-COA-R3-CV, 2007 WL 4523157, at *8 (Tenn. Ct. App. 2007), and do not relate to the rendition of medical services to Mr. Davis.

Appellees contend that the treatment of a methadone patient involves specialized training and knowledge of scientific matters. We note that the treatment of Mr. Davis is not itself at issue here; rather, it is the handling of Mr. Davis after he was treated, and the effect such handling had on the safety of the public at-large. Appellees argue that their assessment of Mr. Davis, in determining whether or not he was capable of leaving the Clinic after receiving his dose, was a decision involving specialized medical skill and training. While

we concede that expert medical testimony might be needed to assist a jury in determining the proper handling of a patient treated with methadone, this fact alone does not place this case within the medical malpractice realm. *See Estate of Doe*, 958 S.W.2d at 122-23.

Appellees argue that any duty that they may owe to Appellants arises solely out of the medical treatment of Mr. Davis. We disagree. While it may be true that Appellees would not be named defendants but for the treatment of Mr. Davis, the specific allegations of negligence made by Appellants relate solely to acts or omissions made by Appellees after the rendition of such treatment. Moreover, as discussed above, the allegations do not, in any way, allege fault with the medical treatment provided to Mr. Davis. The allegations instead attribute fault arising from the handling of Mr. Davis after his treatment and the danger such handling may have posed to members of the public.

Based on the limited facts before us on a motion to dismiss, we believe that any duty Appellees may have owed to Appellants, is one of a health care provider to a non-patient third party. *See, e.g., Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 138 (Tenn. 2001); *Bradshaw v. Daniel*, 854 S.W.2d 865, 872-73 (Tenn. 1993); *Wharton Transp. Corp. v. Bridges*, 606 S.W.2d 521, 527 (Tenn. 1980); *Estate of Jane Doe*, 958 S.W.2d at 122-23; *Turner v. Steriltek, Inc.*, 2007 WL 4523157, at *8. These cases each sounded in ordinary negligence, and we discern that the acts or omissions alleged in Appellants' complaint are analogous.

For these reasons, we conclude that Appellants' claims of direct negligence against Appellees DRD and Dr. Ritchie sound in ordinary negligence, and not in medical malpractice. Consequently, we reverse the trial court's judgment dismissing Appellants' claims for failure to comply with the procedural requirements of the Medical Malpractice Act. We specifically note that our decision does not hold that Appellees owed a duty of care to Appellants, but merely holds that Appellants' complaint alleges a duty and breach of duty that sounds in ordinary negligence.

### B. Agency

We next turn to the trial court's grant of Appellee DRD's motion to dismiss for failure to state a claim of vicarious liability based on a theory of agency. "In the broadest sense, an agency relationship is one wherein the principal authorizes the agent to act for the principal's benefit but at the same time retains the right to control the agent's conduct." *Hussman Refrigeration, Inc. v. South Pittsburgh Assocs.*, 697 S.W.2d 588, 592 (Tenn. Ct. App. 1985). The formation of an agency relationship does not require an explicit agreement, contract, or understanding between the parties, and can be established whether the parties intended to create one or not. *White v. Revco Discount Drug Centers, Inc.*, 33 S.W.3d 713,

723 (Tenn. 2000). "An element of the agency relationship is that the object of the contract be for the benefit of the principal." *Nidiffer v. Clinchfield R. Co.*, 600 S.W.2d 242, 245 (Tenn. Ct. App. 1980) (citing *Foster Trailer Co. v. U.S. Fid. & Guar. Co.*, 228 S.W.2d 107, 109 (Tenn. 1950)).

From our review of the record, the basis for Appellants' claims of vicarious liability based on agency can be found in the following paragraphs of the complaint:

> 10. Contrary to Clinic policy, instead of having to pay for his methadone dose before receiving it, Davis was provided and administered his dose without payment. Instead, he was instructed and allowed by the Clinic to leave the Clinic after receiving his methadone dose for the purpose of traveling to an ATM to obtain cash to pay for his methadone dose. Neither the Clinic and/or Ritchie inquired as to how Davis was going to travel to obtain the requested cash. As such, Davis, at all times material, was an agent of and/or joint venturer with the Clinic making the Clinic jointly and severally liable and/or vicariously liable for the acts of Davis.

> 13. While acting as the agent for and/or as a joint venturer with the Clinic in obtaining cash for payment for his methadone dosage, Davis negligently caused the accident at issue. At the time of the accident, Davis was pharmaceutically impaired by the methadone. His pharmaceutical impairment was a proximate cause of the accident at issue.

> 17. As set forth, *supra*, the Clinic (DRD, Inc. and/or DRD) are jointly and severally liable and/or vicariously liable for the proximate negligence of Davis as he was an agent and/or joint venturer with the Clinic.

Based on these allegations, we must agree with the trial court and conclude that the complaint does not state a claim for vicarious liability based on agency. First, these allegations do not indicate what, if any, benefit the purported principal, DRD, stood to gain by virtue of an agency relationship with Mr. Davis. *Nidiffer*, 600 S.W.2d at 245. Rather, the complaint alleges a standard commercial transaction in which Mr. Davis was rendered medical services and sought to secure funds with which to pay his bill. Mr. Davis was pursuing his own interests, not those of DRD, in paying his debt. Payment of the amount owed cannot itself be considered a benefit to DRD, and an agency relationship is not created

-11-

simply because a creditor requests payment. Second, it is axiomatic that a principal can only do through an agent that which it has the power to do itself. 2A C.J.S. *Agency* § 129 (2011). DRD could not have gone to Mr. Davis' bank and withdrawn funds from his account in order to pay the amount owed. This fact illustrates that Mr. Davis was acting on his own behalf and was not pursuing the interests of DRD when he left the Clinic.

Appellants use of the word "agency," or even the allegation of an agency relationship, is not sufficient to state a claim upon which relief can be granted. These are merely legal conclusions which are not required to be taken as true. *Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1997). Appellants must allege sufficient facts that, if proven, would give rise to liability. *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 697. They failed to do so.

For these reasons, we conclude that Appellants' complaint failed to state a claim for vicarious liability based on agency. Consequently, we affirm the judgment of the trial court in this respect.

### C. Joint Venture

We last address Appellants' claims of vicarious liability against Appellee DRD based on joint venture, which the trial court likewise dismissed. The Tennessee Supreme Court has defined a joint venture as:

> [A]n association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure.

*Spencer Kellogg & Sons, Inc. v. Lobban*, 315 S.W.2d 514, 520 (Tenn. 1958).

Thus, it is often said that a joint venture between two parties requires "a common purpose, some manner of agreement among them and an equal right on the part of each to control both the venture as a whole and any relevant instrumentality." *Dewberry v. Maddox*,

755 S.W.2d 50, 56 (Tenn. Ct. App. 1988) (quoting *Cecil v. Hardin*, 575 S.W.2d 268, 271 (Tenn. 1978)).

From our review of the record, the only allegations of a joint venture in the complaint are those excerpted above that also allege an agency relationship. Based on those allegations, we conclude that the trial court correctly dismissed Appellants' joint venture claim for failure to state a claim upon which relief can be granted.

First, the complaint does not allege that DRD and Mr. Davis intended to "carry out a single business adventure for joint profit." *See Spencer Kellogg & Sons, Inc.*, 315 S.W.2d at 520. The factual allegations merely indicate that the parties carried out a routine transaction for medical services. Neither party profited from Mr. Davis' excursion. Rather, DRD was paid the money owed to it, and Mr. Davis satisfied a monetary obligation.

Second, the allegations do not indicate that there was a "common purpose" between DRD and Mr. Davis. As discussed above, when Mr. Davis left the Clinic to obtain funds to pay his bill, both parties were pursuing their own respective interests. Appellants contend, in their brief, that we should infer the common purpose to be the maintenance of a relationship between methadone patient and provider. Appellants argue that the common purpose to maintain such a relationship can be inferred by the allegation that DRD, contrary to its own policy, provided methadone to Mr. Davis prior to receiving payment and allowed him to later retrieve payment. We note only that, while we must construe allegations in a plaintiff's favor and accept factual allegations as true, we are not required to take as true inferences drawn from the facts. *Riggs v. Burson*, 941 S.W.2d at 47-48. We believe that such a common purpose is not fairly drawn from the facts as alleged.

Third, the complaint does not allege an equal right of control of the venture and the relevant instrumentalities. *See Dewberry v. Maddox*, 755 S.W.2d at 56. The complaint uses words such as "instructed" and "allowed" to describe DRD's actions in relation to Mr. Davis. These words do no indicate parties on equal footing. Conversely, the complaint does not allege that DRD had any right to control Mr. Davis' transportation to, or acquisition of money from, the automated teller machine. If anything, the factual allegations in the complaint imply that DRD did not have the right to control the relevant instrumentalities because it states that "neither the Clinic and/or Ritchie inquired as to how Davis was going to travel to obtain the requested cash."

As noted above, simply using the words "joint venture" or alleging a joint venture relationship without alleging facts sufficient to establish such a relationship is not sufficient to state a claim. These are merely legal conclusions which we are not required to accept as true. *Riggs v. Burson*, 941 S.W.2d at 47-48. After reviewing the complaint, it is simply not

possible to match the elements of a joint venture with the facts as alleged by Appellants.

For these reasons, we conclude that Appellants' complaint failed to state a claim for vicarious liability based on joint venture. Consequently, we affirm the judgment of the trial court in this respect.

## V. **Conclusion**

After reviewing the record, we conclude that Appellants' complaint sounds in ordinary negligence, not medical malpractice. Consequently, we reverse the trial court's judgment dismissing Appellants' claims of direct negligence against Appellees DRD and Dr. Steven Ritchie. However, we affirm the trial court's judgment dismissing Appellants' claims of vicarious liability against Appellee DRD based on theories of agency and joint venture because Appellants have failed to state a claim upon which relief can be granted with respect to these theories. The case is remanded to the trial court for proceedings consistent with this opinion. Costs of this appeal are assessed one-half to Appellees, DRD Knoxville Medical Clinic, DRD Knoxville Medical Clinic, Inc., and Dr. Steven Ritchie, and one-half to Appellants, Alicia and Scott Mathes, and their surety.

_____
J. STEVEN STAFFORD, JUDGE