IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs September 12, 2001

## DAN JOHNSON v. CORRECTIONS CORPORATION OF AMERICA, ET AL.

A Direct Appeal from the Circuit Court for Hardeman County
No. 9308     The Honorable Jon Kerry Blackwood, Judge

No. W2001-00763-COA-R3-CV - Filed December 11, 2001

Plaintiff, an inmate at a correctional facility, filed a complaint against the facility's private management company and its employees, alleging negligence, intentional infliction of emotional distress, assault and battery, medical malpractice under Tennessee state law, and violations of prisoner's rights under the United States Constitution.  The trial court dismissed the complaint for failure to state a claim upon which relief can be granted.  Inmate appeals.  We reverse and remand.

**Tenn.R.App.P. 3; Judgment of the Circuit Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Dan Johnson, Pro Se

Tom Anderson, Jackson, For Appellees

**OPINION**

The record reflects that on August 31, 2000, plaintiff, Dan Johnson ("plaintiff"), filed a complaint in the Circuit Court of Hardeman County, Tennessee against defendants, Corrections Corporation of America ("CCA"), R. Crants, Alan Bargery, Cindy Settles, Rebecca Dotson, Shirley Moore, Doctor Kahn, Edward Barr, John/Jane Doe(s)[1].  The complaint alleges that plaintiff is an inmate at the Hardeman County Correctional Facility ("HCCF"), and on August 5, 1999 defendant, Edward Barr, also an inmate at HCCF, attacked plaintiff by throwing boiling water in plaintiff's face and striking the plaintiff upon his head with an electric coffee pot, referred to as a "hot pot," causing severe personal injuries as described in the complaint.

---

[1] There was no service of process on defendants R. Crants, Cindy Settles, Doctor Kahn, Edward Barr and John/Jane Doe (s), and they are not parties to this appeal.

In Count I of the complaint, plaintiff seeks recovery of damages from defendant Barr for the alleged assault and battery. Since defendant Barr was not served with process, this Count of the complaint is not involved in this appeal.

In Count II of the complaint, plaintiff alleges that after the assault he was escorted to the medical department in the correctional facility and was seen by some attendants. He alleges that he was made to wait several hours before being treated although complaining repeatedly about pain and suffering. He alleges that defendant, Doctor Kahn, was the attending physician at the facility and had a duty to exercise the required degree of care, skill, and diligence to give him proper treatment, and that he failed to do so. Plaintiff further alleges that the attendants in the facility did not give him the proper care and, because of their negligence, he endured unnecessary pain, suffering, and aggravation of his injuries, and he demands judgment against Kahn and defendants John/Jane Doe(s). However, since they have not been served with process in this case, this Count is not involved in this appeal.

In Count III of the complaint, plaintiff alleges that Doctor Kahn and the attendants in the medical facility were acting "under the color of the statutes, customs, policies, and usage of the State of Tennessee, County of Hardeman, City of Whiteville, and the Tennessee Department of Correction (by contract)." He alleges that they showed intentional and deliberate indifference to his rights and deprived him of his right to medical treatment causing him to suffer cruel and inhuman punishment, all in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff seeks recovery in this Count against defendant Kahn and the attendants in the medical facility, none of whom were served with process; therefore, this Count is not involved in this appeal.

In Count IV of the complaint, plaintiff relates the disciplinary action taken against defendant Barr because of his assault on plaintiff. In great detail he alleges that, on September 9, 1999, after his discharge from the medical treatment facility, he was returned to the regular housing unit at HCCF, and on September 13, 1999, he was removed from the regular housing unit and placed in protective custody. He alleges that in retaliation for filing a formal grievance concerning his medical treatment, prison officials then placed him in a punitive segregation unit without issuing a disciplinary report or filing the proper due process procedures under Tennessee Department of Correction policy. The complaint alleges that he was ultimately granted a due process hearing on September 28, 1999, and the review committee recommended that he be released from segregation, but that despite this recommendation he was held in segregation until October 30, 1999, and this was at the behest of defendants, Dotson, Settles, and Bargery. He alleges that he was held in segregation unnecessarily for protection about twenty days after the defendant Barr had been released from custody and left the prison. The complaint further alleges that the actions of keeping plaintiff in segregated custody by defendants, Moore, Dotson, Settles, and Bargery, was intentional, malicious, willful, and wanton, and showed indifference to the consequences of their actions, all of which inflicted mental and emotional suffering and distress. He demands judgment against the defendants Moore, Dotson, Settles, and Bargery for $50,000.00 compensation and $50,000.00 punitive damages.

In Count V, the complaint alleges that defendants CCA, through its employees and agents, Crants and Bargery, negligently and carelessly permitted the sale and use of the "hot pots" by the prisoners when they knew or should have known that they could be used to injure the inmates. The complaint alleges that, by virtue of this negligence, plaintiff suffered grievous injuries and permanent disfigurement and demands judgment against defendants, CCA, Crants, and Bargery for $200,000.00 compensatory and $100,000.00 punitive damages.

In Count VI, the complaint alleges that the defendants, CCA, Crants, and Bargery, were acting "under color of the statutes, ordinances, customs, policies, and usage of the State of Tennessee, County of Hardeman, City of Whiteville, and the Tennessee Department of Correction (by contract)." Plaintiff alleges that these defendants had a duty to protect him from violence and failed to act in good faith to carry out the said duties, and that as a result of the said actions of these defendants, he was severely and permanently injured. He demands judgment against these defendants in the amount of $200,000.00 compensatory and $100,000.00 punitive damages.

In Count VII of the complaint, plaintiff re-alleges and incorporates the previous counts and alleges that at all times material the defendants, Kahn, Moore, Settles, Dotson, and Doe, were acting under the direction and control of the defendants, CCA, Crants, and Bargery. The complaint alleges that CCA, Crants, and Bargery, had a duty and obligation to instruct, supervise, and control the other said defendants in their duties, and failed to comply with their duties. The complaint further alleges that CCA, Crants, and Bargery, were acting under color of law and "approved, ratified, and covered up the unlawful, deliberate, malicious, reckless, negligent, willful and wanton conduct of the other defendants" as described in the complaint. This count seeks judgment against defendants, CCA, Crants, and Bargery, in the amount of $200,000.00 compensatory damages and $100,000.00 punitive damages.

The record reflects that, on August 31, 2000, Mr. Johnson also filed a "Motion for Restraining Order" to prevent "the defendants, their officers, agents, attorneys, or other persons in active concert or participation with them, from retaliating or initiating reprisals against the plaintiff . . .," and this motion was denied by order entered November 1, 2000.

On October 13, 2000, defendants, Corrections Corporation of America, Alan Bargery, Rebecca Dotson, and Shirley Moore, filed a motion to dismiss pursuant to Rule 12.02(6), Tenn.R.Civ.P., for failure to state a claim upon which relief can be granted. The memorandum filed in support of the motion to dismiss asserts that Count I, II, III, IV, V, and VI, are barred by the applicable statute of limitations, T.C.A. § 28-3-104. As to remaining claims, the memorandum asserts that the allegations do not support a claim for retaliation. The memorandum states that plaintiff has failed to "establish" that he has suffered an atypical and significant hardship in relation to the ordinary incidents of prison life and has failed to assert any actual injury as a result of his denial of access to court. The memorandum further states that plaintiff failed to allege that defendants, CCA and Bargery, were directly involved in the incident, asserting that a corporation and supervisory officials cannot be held liable for civil rights violations under the doctrine of *respondeat superior*.

On March 1, 2001, the trial court entered an order granting the motion to dismiss filed by the above-named four defendants. Plaintiff has appealed and presents two issues for review:

> 1. Whether the trial court erred in granting defendants' motion to dismiss for failure to state a claim.

> 2. Whether the trial court erred in denying plaintiff's motion for a restraining order.

A motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997). However, "inferences to be drawn from the facts or the legal conclusions set forth in a complaint are not required to be taken as true." *Id.* at 48 (citing *Dobb v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). Obviously, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint considered alone and taken as true are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn. 1994). The motion should be denied unless it appears that the plaintiff can establish no facts supporting the claim that would warrant relief. *See Doe v. Sundquist*, 2 S.W.3d 919 (Tenn. 1999).

In his complaint, Mr. Johnson alleges assault and battery, negligence, medical malpractice, and constitutional violations stemming from events which occurred August 5, 1999. The trial court apparently found those claims were barred by the applicable statute of limitations, since Mr. Johnson's complaint was marked filed on August 31, 2000, more than one year after the alleged assault took place. However, Rule 5.06 of the Tennessee Rules of Civil Procedure allows a *pro se* litigant more leeway in determining when an action is timely filed. Rule 5.06 provides, in relevant part:

> If papers required or permitted to be filed pursuant to the rules of civil procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, *filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing.* This provision shall also apply to service of paper by such litigants pursuant to the rules of civil procedure. "Correctional facility" shall include a prison, jail, county workhouse or similar institution in which the pro se litigant is incarcerated. Should timeliness of filing or service become

> an issue, ***the burden is on the pro se litigant to establish compliance
> with this provision.***

Tenn. R. Civ. P. 5.06 (2001) (emphasis added).

Plaintiff's response to the motion to dismiss asserts that the complaint was filed July 31, 2000, and attached to the response is a photocopy of the front and back of a certified mail return receipt postcard indicating that the circuit court clerk received the complaint and related papers on August 2, 2000. The response also attaches a photocopy of a Department of Correction trust fund account personal withdrawal request which indicates that $5.85 was withdrawn from Mr. Johnson's prison trust account on July 31, 2000 to cover the cost of postage. Coupled with these matters shown in Mr. Johnson's response, we notice a discrepancy in the record that indicates some error in the filing date. A Uniform Affidavit of Indigency is shown in the record as being filed August 31, 2000 at the same time the complaint was filed. However, on the last page of the affidavit the record indicates that the trial judge's order authorizing the filing on pauper's oath was signed by the judge on August 21, 2000. With this discrepancy in the record, along with plaintiff's assertion and the evidence filed therewith concerning the correct filing date, the dismissal of the case by virtue of the statute of limitations without an evidentiary hearing was inappropriate. We should also note that the allegations of the complaint in Counts I, II, and III are against defendants who were not served with process and could possibly be dismissed on the basis of the statute of limitations by failure to comply with the rules concerning reissue of process. At any rate, as to the defendants involved in this appeal, a factual dispute is involved concerning the true date of the filing of the complaint.

Assuming Mr. Johnson can demonstrate that the court clerk received his complaint prior to the expiration of the one-year statute of limitations, Mr. Johnson would be able to assert any claims arising out of the events occurring on August 5, 1999 as they relate to defendants CCA, Bargery, Dotson, and Moore. In the interest of judicial economy, we will now address the prima facie validity of Mr. Johnson's claims on appeal, including those dependent upon Mr. Johnson's timely filing of the complaint in this action.

Counts I, II and III of Mr. Johnson's Complaint contain allegations against defendants who are not parties to this appeal. Count IV of the complaint, as amended in Mr. Johnson's Amended complaint, filed November 7, 2000, alleges retaliation for Mr. Johnson's filing of a grievance. Specifically, Mr. Johnson claims he was placed in punitive segregation after he filed a grievance on August 13, 1999, "complaining of the circumstances surrounding the assault, the denial of proper medical treatment, and giving notice of his intent to seek legal action." Mr. Johnson alleges this retaliation was in violation of his

> constitutional, statutory, and administrative rights, privileges and immunities to free speech, access to the courts, and due process of law as guaranteed and protection under the First, Fifth, and Fourteenth Amendments to the United States Constitution; Article 1, Sections 8, 17, and 19 of the Tennessee Constitution; Tenn. Code

Ann. § 4-3-603, and § 41-24-101 *et seq*; and Tennessee Department of Correction Policy Number 9501.01.

We begin with Mr. Johnson's First Amendment claim under 42 U.S.C. § 1983 (2001 Supp.).[2] A retaliation claim essentially alleges that a defendant took adverse action against the plaintiff because the plaintiff engaged in constitutionally or statutorily protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999). The Eleventh Circuit Court of Appeals has held that filing a grievance for segregated confinement is constitutionally protected conduct under the First Amendment. *See Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). The Sixth Circuit Court of Appeals has developed a three-part analysis to determine if a plaintiff states a viable retaliation claim:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394.

In the case at bar, Mr. Johnson has alleged all of the above elements of a prima facie claim of retaliation for his filing a grievance. Defendants claim Mr. Johnson "failed to establish that he suffered an atypical and significant hardship in relation to ordinary incident of prison life, failed to [assert] any actual injury as a result of allegations of denial of access to courts and failed to allege that the Defendants . . . were in some way directly involved in the incident." However, Mr. Johnson's Amended complaint *alleges* what we believe could be considered just such an "atypical and significant hardship." Mr. Johnson also alleges that his extended confinement resulted in the interruption of his "mental health treatment," which caused "his mental condition to severely deteriorate." Mr. Johnson claims that defendants Dotson, Moore, and Bargery made the decision to place him in punitive segregation. Construed in the light most favorable to Mr. Johnson, we believe

---

[2]That section provides, in relevant part:

**§ 1983. Civil action for deprivation of rights**
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

(West Supp. 2001).

Mr. Johnson clearly states a claim for retaliation, both under the United States and Tennessee Constitutions.

Mr. Johnson also alleges that defendants denied him his rights under the Fourteenth Amendment when they placed "him in punitive segregation without providing plaintiff with the minimum due process requirements. . ." The Due Process Clause of the Fourteenth Amendment protects individuals in part by guaranteeing fair procedure. *See Zinerman v. Burch*, 494 U.S. 113, 125 (1990). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* Such a claim is not actionable under 42 U.S.C. § 1983 until the State fails to provide due process. *Id.* The question, therefore, is what process is due, if any, and whether the process the State provides is constitutionally adequate. *Id.*

The Sixth Circuit Court of Appeals has held that "policy statements and other promulgations by prison officials" can create liberty interests, the abrogation of which may violate a prisoner's due process rights. *Bills v. Henderson*, 631 F.2d 1287, 1291 (6th Cir. 1980). Similarly, the Sixth Circuit has noted that:

> Where statutes or prison policy statements have limited prison officials' discretion by imposing a specific prerequisite to the forfeiture of benefits or favorable living conditions enjoyed by a prison, an expectation or entitlement has been created which cannot be taken away without affording the prisoner certain due process rights.

*Id.* at 1292-93. The United States Supreme Court has added a requirement that only those restraints to a prisoner's liberty which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" are actionable under the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In the case at bar, Mr. Johnson does not challenge the constitutionality of the administrative process itself, but alleges that defendants denied him process provided by Tennessee Department of Correction policy. Mr. Johnson alleges that, before he was placed in punitive segregation, TDOC policy provided him with certain disciplinary procedures, including issuance of a disciplinary report. He claims that defendants failed to follow these procedures when they transferred him from protective to punitive segregation. Mr. Johnson also alleges that he was denied his mental health treatment and held in segregation an additional 20 days after the release of defendant Barr, in spite of the fact that the review committee recommended he be released from segregation.

Since this case comes to us on a motion to dismiss, we must take as true Mr. Johnson's allegations that defendants failed to follow existing disciplinary procedures, and placed him in punitive segregation "without a disciplinary report being issued, without any of the Uniform

Disciplinary Procedures being followed." Under the above-cited authorities, Mr. Johnson's complaint states a prima facie claim of a due process violation.

Counts V and VI of Mr. Johnson's complaint addresses defendant's alleged failure to protect Mr. Johnson from "violence at the hands of other prisoners." Although Mr. Johnson mentions the Fifth, Eighth and Fourteen Amendments as the legal basis of this "failure to protect" claim, we believe this claim falls squarely under the Eighth Amendment's prohibition against cruel and inhuman punishment. *See, generally, Graham v. Connor*, 490 U.S. 386, 395 (noting that claims under 42 U.S.C. § 1983 must be judged "by reference to the specific constitutional standard which governs that right.")

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). *See also Street v. Corrections Corporation of America*, 102 F.3d 810, 814 (6th Cir. 1996). To hold prison officials liable for an Eighth Amendment violation, an inmate must show: (1) that the conditions of his incarceration pose him a "substantial risk of serious harm," and (2) that the prison official's state of mind was "deliberate indifference" to the inmate's health or safety." *Farmer*, 511 U.S. at 834. This "deliberate indifference" standard is the equivalent to reckless disregard of the risk of serious harm. *Farmer*, 511 U.S. at 836. In determining whether such a standard is met, courts must determine if a prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

For the purposes of reviewing the trial court's dismissal of the claims in this case, we hold that the allegations contained in Mr. Johnson's complaint are sufficient to state a prima facie claim of an Eighth Amendment violation. Mr. Johnson has specifically alleged defendants' state of mind as "knowingly . . . or with deliberate indifference." Mr. Johnson has alleged that defendants knew that the sale of hot pots to prisoners, and permitted use of those hot pots by prisoners, had resulted in "dozens of assaults against prisoners by other prisoners" both prior to, and after the incident out of which this lawsuit arose.

Since we have held that Mr. Johnson's claims must survive defendants' Motion to Dismiss, and since Count VII of Mr. Johnson's complaint is essentially a restatement of the prior Counts, we need not address its validity here.

Finally, we feel it necessary to address what we feel is a significant error contained in defendants' appellate brief. Counsel for defendants writes,

> In reviewing whether the evidence supports the Order, the courts follow ". . . the traditional rule of viewing the evidence in the light most favorable to the prevailing party." *Coal Resources, Inc. v. Gulf & Western Industries, Inc.*, 865 F.2d 761, 767 (6th Cir. 1989), *amended* 877 F.2d 5 (6th Cir. 1989); *Calhoun v. Baylor*, 646 F.2d 1158, 1160 (6th Cir. 1981). Orders of the trial courts are entitled to considerable defense, and judgments supported by some competent,

credible evidence going to all the essential elements will not be reversed by a reviewing court as against the manifest weight of the evidence. *Adkins v. GAF Corp.*, 923 F.2d 1225, 1232 (6th Cir. 1991). Unless the evidence so clearly favors the Appellant that reasonable minds could not differ, the trial court should be upheld. *See Calhoun* at p. 1160.

The cases counsel for defendants cites pertain to evidence supporting judgments, and have nothing to do with a case dismissed for failure to state a claim. As we have said, "A motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint."

As to second issue in this case, concerning the trial court's denial of Mr. Johnson's motion for a restraining order, we affirm the trial court. Rule 65.03 of the Tennessee Rules of Civil Procedure provides that:

> A restraining order may be granted at the commencement of the action or during the pendency thereof without notice, if it is clearly shown by verified complaint or affidavit that the applicant's rights are being or will be violated by the adverse party and the applicant will suffer immediate and irreparable injury, loss or damage before notice can be served and a hearing had thereon.

Tenn. R. Civ. P. 65.03 (2001). We believe that, in this case, no hearing was necessary for the trial court to determine such an order was unwarranted in this case. From Mr. Johnson's complaint, it appears that the retaliation Mr. Johnson was concerned about, if any, had already occurred by the time Mr. Johnson sought the restraining order. We find nothing in the record to indicate defendants' proclivity for retaliation because of a civil suit for damages.

For the foregoing reasons, the Order of the trial court dismissing plaintiff/appellant's complaint is reversed. This case is remanded to the trial court for an evidentiary hearing on the issue of statute of limitations and for further proceedings consistent with this opinion. Costs of this appeal are assessed to the defendants/appellees.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.