# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
On-Briefs July 23, 2002

## THOMAS PONCHIK v. DON PAUL, ET AL.

### A Direct Appeal from the Circuit Court for Hardeman County
### No. 9367     The Honorable  Jon Kerry Blackwood, Judge

---

### No. W2002-00150-COA-R3-CV - Filed August 22, 2002

---

Plaintiff, an inmate at a correctional facility, filed a complaint against the facility's private management company and its employees, alleging violations of prisoner's rights under the United States Constitution.  The trial court dismissed the complaint for failure to state a claim upon which relief can be granted.  Inmate appeals.  We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Thomas Ponchik, Pro Se

Tom Anderson, Jackson, For Appellees, Corrections Corporation of America, Don Paul, Jamison Burvee, Charles Howard, Judith Polk, Georgia Cross, Fred Figueroa, Julie Bass, and Linda Cooper

### OPINION

The record reflects that on March 1, 2001, Plaintiff, Thomas Ponchik ("Plaintiff" or "Mr. Ponchik"), filed a complaint in the Circuit Court of Hardeman County, Tennessee against Defendants, Donald Paul, Jamison Burvee, Charles Howard, Judith Polk, Georgia Cross, Fred Figueroa, Julie Bass, Corrections Corporation of America ("CCA"), and Linda Cooper.  The Complaint alleges that Plaintiff is an inmate at North Fork Correctional Facility in Sayre, Oklahoma, but that at all times relevant to this case, was an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee.

The Complaint alleges that, as a result of Plaintiff's filing "numerous" lawsuits against CCA and its employees and assisting other inmates in legal matters, the Defendants retaliated against Plaintiff by filing false and frivolous conduct reports against him, and by transferring him to an Oklahoma prison.  The Complaint contains the following causes of action:

(33)     The plaintiff was [sic] written at least 7 false and frivolous conduct reports starting in November of 1999. This [sic] conduct reports were written by defendants Donald Paul, Georgia Cross and Julie Bass to retaliate against the plaintiff because he filed numerous lawsuits against prison officials and assisted numerous other inmates with there [sic] legal problems.

(34)     The due process rights as set forth in prison policy 15-2 were violated concerning the seven (7) frivolous conduct reports written against the plaintiff starting in November of 1999 and continuing until October of 2000.

(35)  The plaintiff was placed on a van on November 2, 2000 and transported to the State of Oklahoma in retaliation for his expressing his constitutional rights. There was no valid reason to transfer the plaintiff from Tennessee to Oklahoma and the sole reason for his transfer was to punish the plaintiff for expressing his constitutional rights of addressing the courts and assisting other inmates with their legal problems.

(36)     The name of the plaintiff was added to the "security threat group" list (A.K.A. "Gang List") to retaliate against him for filing lawsuits. The plaintiff is not now, nor has ever been, a member of any prison gang. The plaintiff was forced to remain in administrative segregation from 4-20-00 to 7-25-00 under false pretenses.

(37)     The retaliation against the plaintiff, by the defendants, is in violation and actionable under 42 U.S.C. § 1983. The First Amendment of the United States Constitution prohibits prison officials from retaliating against the plaintiff for his exercising his right of free speech. When the plaintiff placed a "confidential" sticker on a letter addressed to the internal affairs department of the prison it was a [sic] exercise of his freedom of speech right. The defendants wrote a conduct report against the plaintiff for this protected conduct.

(38)     The plaintiff's right to meaningful access to the courts has been violated.

(39)     The actions by the herein named defendants have been outrageous and these intentional acts have been performed against the plaintiff with malice and evil intent.

(40)    The acts of the defendants described in the paragraphs above were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon the plaintiff and were done in reckless disregard of the probability of causing the plaintiff emotional distress and these acts did in fact result in severe and extreme emotional distress to the plaintiff.

(41)    As a direct and proximate result of the defendants' acts alleged herein, plaintiff was caused to incur severe and grievous mental and emotional suffering, fright, shock, nervousness and anxiety.  Plaintiff continues to be fearful, anxious, and nervous.  For this harm the plaintiff requests that this court award him the compensatory damages as set forth in the relief section of this complaint.

(42)    The conduct of the herein named defendant is outrageous. They have jointly and severally demonstrated gross negligence while violating their own written policy and procedures.

On April 6, 2001, Defendants filed a Motion to Dismiss alleging that Plaintiff failed to comply with T.C.A. § 41-21-805 regarding the filing of an affidavit of inability to pay, and T.C.A. § 41-21-806 regarding the requirement that an inmate file affidavits regarding grievances.  The trial court denied Defendants' Motion on June 8, 2001.

Defendants filed a second Motion to Dismiss on July 12, 2001 for failure to state a claim upon which relief can be granted.  The motion raised the applicable statute of limitations as a bar for any conduct in the Complaint which occurred prior to March 1, 2000, and alleging that Plaintiff had failed to allege the requisite conduct on the part of Defendants to state a claim for retaliation.  The trial court, after granting Plaintiff more time to respond to the Defendants' Motion, entered an Order granting Defendants' Motion on December 18, 2001.

Plaintiff, acting *pro se*, has appealed, and presents three issues for our review, as stated in his appellate brief:

(1)    Is Thomas Ponchik a prisoner as defined by Tennessee statute?
(2)    Was the court proper for dismissing this action?
(3)    Did the clerk perform error when Thomas Ponchik submitted his brief in reply to the Defendants Motion to Dismiss.  She filed the reply brief under the wrong case number when Thomas Ponchik submitted his reply brief to the court.

For the following reasons, we affirm the Order of the trial court dismissing Plaintiff's Complaint.

-3-

A motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn.1997). However, "inferences to be drawn from the facts or the legal conclusions set forth in a complaint are not required to be taken as true." *Id*. at 48 (citing *Dobb v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App.1992)). Obviously, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App.1990). The basis for the motion is that the allegations in the complaint considered alone and taken as true are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn.1994). The motion should be denied unless it appears that the plaintiff can establish no facts supporting the claim that would warrant relief. *See Doe v. Sundquist*, 2 S.W.3d 919 (Tenn. 1999).

We begin our analysis by noting that the first issue presented, regarding his status as a "prisoner" under Tennessee statutes, is not in dispute. Although this issue was the subject of Defendants' first Motion to Dismiss in the case, the trial court denied Defendants' motion, and Defendants do not appear to dispute Plaintiff's status upon appeal. This is a non-issue.

Mr. Ponchik's next issue concerns his First Amendment claim under 42 U.S.C. § 1983 (2001 Supp.).[1] A retaliation claim essentially alleges that a defendant took adverse action against the plaintiff because the plaintiff engaged in constitutionally or statutorily protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir.1999). The Sixth Circuit Court of Appeals has developed a three-part analysis to determine if a plaintiff states a viable First Amendment retaliation claim:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the

---

[1]That section provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

(West Supp.2001).

adverse action was motivated at least in part by the plaintiff's protected conduct.

***Thaddeus-X***, 175 F.3d at 394.

In the case at bar, Mr. Ponchik has failed to allege all of the above elements of a prima facie claim of retaliation. While we agree that Mr. Ponchik engaged in "protected conduct" in filing and assisting others in filing lawsuits against prison officials, Mr. Ponchik has failed to detail how his transfer to an Oklahoma prison in any way prevented or discouraged him from exercising his right to petition the court for redress of grievances. Without such an allegation, Mr. Ponchik cannot meet the third requirement under ***Thaddeus-X***, in which he must show a causal connection between his transfer and his inability to freely access the courts.

Mr. Ponchik also fails to state a claim to the extent that alleges he was entitled to certain procedural safeguards before CCA could transfer him to another prison. Although it is well settled that the Due Process Clause of the Fourteenth Amendment protects individuals in part by guaranteeing fair procedure, "what is unconstitutional is the deprivation of [liberty interests] without due process of law." ***See Zinerman v. Burch***, 494 U.S. 113, 125 (1990). The United States Supreme Court has made it clear that only those restraints to a prisoner's liberty which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" constitute deprivations which are actionable under the Due Process Clause. ***Sandin v. Conner***, 515 U.S. 472, 484 (1995).

In this case, Mr. Ponchik has failed to allege any such atypical or significant hardship. Transfers to other prisons and administrative segregation do not constitute "atypical or significant hardships" in and of themselves. The Court of Appeals for the Sixth Circuit has held, on several occasions, that "inmates have no constitutional right to be incarcerated in any particular state institution and may be transferred at the discretion of state officials unless the state has created a liberty interest in remaining in a particular institution." ***Goddard v. Kentucky Dept. of Corrections***, 2000 U.S. App. LEXIS 1912, at *5 (6th Cir. 2000). ***See also Holloman v. Ohio Dept. of Rehabilitation/Correction***, 1998 U.S. App. LEXIS 1679, at *3 (6th Cir. 1998). Similarly, to the extent Mr. Ponchik alleges Due Process violations because of his confinement to administrative segregation as a result of his protected activities, the Sixth Circuit has held that prisoners have no right to be free of disciplinary or administrative segregation, "as such segregation does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" ***Goddard***, 2000 U.S. App. LEXIS 1912, at *4 (quoting ***Sandin v. Conner***, 515 U.S. 472, 484 (1995)).

Without any specific allegation that his transfer to Oklahoma has, in some way, interfered with his constitutionally protected rights, we must hold that Mr. Ponchik's second issue on appeal is without merit.

The final issue on appeal concerns whether the Mr. Ponchik was somehow prejudiced by the trial court clerk's failure to insure that Plaintiff's Response to Motion to Dismiss [2nd] was before the judge. This issue is also without merit because Plaintiff did not raise the clerk's failure to properly file Plaintiff's Response at the trial level.

Rule 13(c) of the Tennessee Rules of Appellate Procedure (2002) provides:

> (c) Facts That May Be Considered on Appeal. The Supreme Court, Court of Appeals, and Court of Criminal Appeals may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14.

Even if, *arguendo*, the trial court did err in somehow failing to ensure the clerk properly filed Plaintiff's Response, we hold such error to be harmless. As we have noted above, we review a Motion to Dismiss upon the Complaint itself, and take as true all relevant and material allegations. Under this standard of review, therefore, neither we nor the trial court need look to the Plaintiff's Response to determine whether Plaintiff has stated a claim.

For the foregoing reasons, the Order of the trial court dismissing Plaintiff's complaint is affirmed. This case is remanded to the trial court for any further proceedings consistent with this opinion. Costs of this appeal are assessed to the Plaintiff/Appellant, Thomas Ponchik.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.