IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2019

## PAMELA COTHAM v. NICHOLAS JAY YEAGER ET AL.

Appeal from the Chancery Court for Anderson County
No. 18CH72       Robert E. Lee Davies, Senior Judge

_____

### No. E2019-00423-COA-R3-CV

_____

The plaintiff filed this action seeking to recover damages on behalf of Anderson County based upon the plaintiff's allegations that the defendants had submitted false claims for payment by the county. The trial court dismissed the action, determining that the plaintiff's amended complaint had failed to state a claim upon which relief could be granted. The plaintiff has appealed. Discerning no reversible error, we affirm the trial court's judgment of dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Gregory Brown, Knoxville, Tennessee, for the appellant, Pamela Cotham.

Jonathan Swann Taylor and Caitlin C. Burchette, Knoxville, Tennessee, for the appellee, Nicholas Jay Yeager.

Steven H. Trent and Chelsea N. Hayes, Johnson City, Tennessee, for the appellee, Securus Technologies, Inc.

### OPINION

#### I. Factual and Procedural Background

On October 25, 2016, the plaintiff, Pamela Cotham, filed a complaint in the Knox County Chancery Court ("Knox County court"), naming Nicholas Jay Yeager; Securus Technologies, Inc. ("Securus"); and Avery Johnson as defendants. Ms. Cotham stated

that she was a resident of Oliver Springs, Tennessee, and was employed as a Purchasing Agent for Anderson County ("the County"). Ms. Cotham sought to bring her action as a *qui tam* plaintiff on behalf of the County.[1] Ms. Cotham explained that Mr. Yeager was the Law Director for the County and that Mr. Johnson was, at the time of the alleged incident, the Chief Jailer for the Anderson County Sheriff's Department.

According to Ms. Cotham, Securus provided telephone services for inmates in the Anderson County Jail pursuant to a contract that began on July 1, 2008, and ended on June 30, 2013. Ms. Cotham stated that Securus was the winning bidder when bids for such telephone services were solicited by the County and that the resulting contract was properly approved and filed pursuant to the provisions of the County Purchasing Law of 1957, codified at Tennessee Code Annotated § 5-14-101, *et seq*. ("the Purchasing Act"), and duly adopted by the County.[2] Ms. Cotham further stated that she spoke to Mr. Johnson before the contract's expiration date to inquire about soliciting bids for a new contract when he told her that he wanted to wait until construction at the Anderson County Jail was completed. Mr. Johnson subsequently retired in November 2013.

Ms. Cotham alleged that when she prepared a draft request in January 2014 for contract proposals to replace the expired Securus contract, she became aware of a contract extension between the County and Securus, dated August 21, 2012, which purported to extend the term of the contract for telephone services until June 30, 2015 ("Contract Extension"). Ms. Cotham further alleged that the Contract Extension was signed as to form by Mr. Yeager and that Mr. Yeager had also "forged" Mr. Johnson's signature on the contract. According to Ms. Cotham, the Contract Extension did not comply with the provisions of the Purchasing Act for several reasons, including that it was not competitively bid and was not signed by the Purchasing Agent. Ms. Cotham averred that Mr. Yeager and Securus were aware that the Contract Extension did not comply with applicable law. She further alleged that Mr. Johnson either misled her concerning his awareness of the Contract Extension during her discussions with him in 2012 and 2013 or testified falsely during a subsequent 2015 deposition in an unrelated case when he stated that he was aware of the Contract Extension when it was signed by Mr. Yeager.

In addition to her allegations concerning the defendants' awareness of the issues with the allegedly unlawful Contract Extension, Ms. Cotham claimed that Mr. Yeager "threatened" her in order to induce her to "cover up" any problem with the Contract Extension. Ms. Cotham also asserted that the County had failed to take any action to deal

---

[1] A *qui tam* action has been defined as one "'brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.'" *State ex rel. Landenberger v. Project Return, Inc.*, No. M2007-02859-COA-R3-CV, 2009 WL 637122, at *1 n.1 (Tenn. Ct. App. Mar. 11, 2009) (quoting BLACK'S LAW DICTIONARY 1282 (8th ed. 2004)).

[2] The parties do not dispute that the Purchasing Act has been adopted by Anderson County.

with the unlawful Contract Extension. According to Ms. Cotham, the contractor who eventually replaced Securus in providing telephone services to inmates was paid much less than Securus, such that the County was damaged by having to expend exorbitant funds during the term of the Contract Extension. Ms. Cotham alleged that Securus had violated Tennessee Code Annotated § 4-18-103 of the Tennessee False Claims Act ("TFCA") by presenting false claims for payment to the County pursuant to the Contract Extension and that Mr. Yeager and Mr. Johnson had also violated the TFCA by making or using a false record in order to have such claims paid by the County. Ms. Cotham further alleged that all three defendants were jointly and severally liable to the County for three times the amount of the funds paid to Securus under the unlawful Contract Extension, costs of the civil action, and a penalty of $2,500 to $10,000 for each false claim. Ms. Cotham claimed that she was entitled to payment of her expenses and attorney's fees in bringing the action as a *qui tam* plaintiff.

Ms. Cotham subsequently filed an amended complaint on February 27, 2017, and attached copies of the original contract and the Contract Extension. On April 28, 2017, Securus filed an answer, denying the material averments of the complaint. Securus asserted several affirmative defenses, including failure to join indispensable parties, lack of standing, and unclean hands. Securus also filed a counterclaim against the County, asserting that it had breached the contract Securus had with the County by unilaterally canceling it in January or February 2014. Securus alleged that the County was unjustly enriched because Securus installed expensive equipment at the Anderson County Jail in anticipation of ongoing revenue from the contract. Securus concomitantly filed a motion for judgment on the pleadings pursuant to Tennessee Rule of Civil Procedure 12.03, as well as a motion to dismiss or transfer the matter due to improper venue.

Mr. Yeager filed an answer on May 4, 2017, also concomitantly filing motions to dismiss for improper venue and for judgment on the pleadings. The County, as counter-defendant, filed a motion to dismiss Securus's counterclaims on May 30, 2017.

On July 20, 2017, Ms. Cotham filed a notice of compliance with the provisions of Tennessee Code Annotated § 4-18-104(c). Securus subsequently filed a response, alleging that subject matter jurisdiction had not been established. Ms. Cotham filed a second notice of compliance on August 10, 2017. On October 4, 2017, the Knox County court entered an agreed order dismissing the counterclaims asserted by Securus against the County. The Knox County court subsequently entered an order on February 5, 2018, transferring the matter to the Anderson County Chancery Court ("trial court"). In its incorporated memorandum opinion, the Knox County court determined that the action was local in nature, such that venue would properly lie in Anderson County.

Following transfer of the action, Anderson County Chancellor Nichole Cantrell entered an order recusing herself on November 26, 2018, based on her personal knowledge of the facts in dispute in the proceeding. The matter was thereafter assigned

to Senior Judge Robert E. Lee Davies. The trial court, with Judge Davies presiding, conducted a hearing on January 22, 2019, and subsequently entered a memorandum opinion and order on February 4, 2019, dismissing Ms. Cotham's amended complaint for failure to state a claim upon which relief could be granted.

In its order, the trial court determined that Ms. Cotham had failed to allege facts establishing that Securus had presented claims for payment to the County that were false. The court also determined that pursuant to the contract between Securus and the County, the inmates paid Securus for telephone services, and Securus provided a commission to the County. Therefore, as the court determined, no county funds were expended. Because of this, the court concluded that the Purchasing Act did not apply to the Contract Extension and that Securus did not submit false claims or conspire to deceive the County. The court further determined that Mr. Yeager did not submit any false claims for payment by the County. The court accordingly dismissed Ms. Cotham's claims. Ms. Cotham timely appealed.

## II. Issues Presented

Ms. Cotham raises the following issues on appeal, which we have restated slightly:

1.    Whether the trial court erred by determining that the Contract Extension between Securus and the County for inmate telephone services was not a contract for "services" subject to the requirements of the Purchasing Act.

2.    Whether the trial court erred by determining that Ms. Cotham failed to plead allegations of fraud with sufficient particularity so as to state a claim under the TFCA.

## III. Standard of Review

This Court has previously explained that "[w]hen reviewing orders granting a Tenn. R. Civ. P. 12.03 motion [for judgment on the pleadings], we use the same standard of review we use to review orders granting a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). As our Supreme Court has elucidated concerning a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss:

> The sole purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997). When reviewing a dismissal of a complaint under Rule 12.02(6), this Court must take the

- 4 -

factual allegations contained in the complaint as true and review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. *See, e.g., Doe v. Sundquist*, 2 S.W.3d at 922. Because a motion to dismiss a complaint under Rule 12.02(6) challenges only the legal sufficiency of the complaint, courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See, e.g., Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002).

*Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003).

Concerning questions of statutory construction and application, our Supreme Court has additionally stated that "construction of a statute and its application to the facts of a case are questions of law, which we review *de novo* with no presumption of correctness." *Gautreaux v. Internal Med. Educ. Found., Inc.*, 336 S.W.3d 526, 531 (Tenn. 2011). Moreover, the High Court has summarized the principles involved in statutory construction as follows:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009).

## IV. Nature of the Contract Extension

Ms. Cotham's claims that the defendants violated the TFCA hinge upon her assertion that the Contract Extension ran afoul of the Purchasing Act's requirements. Ms. Cotham argues that the Contract Extension can only be characterized as a contract for services to which the Purchasing Act would clearly apply. Securus and Mr. Yeager posit that the Purchasing Act does not apply to the Contract Extension because the County was not paying Securus for the telephone services Securus provided to inmates. It is undisputed that Securus paid the County a commission based on revenues received from the inmates.

The Purchasing Act specifically provides in relevant part that the county purchasing agent has the exclusive power to "[c]ontract for and purchase all supplies, materials, equipment and contractual services required by each and every official, agency, office, department or employee of the county government, or that is supported by, or under control of, the county government <u>and that expends or encumbers any of the county's funds</u>." *See* Tenn. Code Ann. § 5-14-105(1) (2015) (emphasis added). This statutory subsection further provides that "[n]o other official, employee or agent of the county or of any of its departments or agencies shall be authorized to contract for or purchase any such materials, supplies, equipment or contractual services." *Id*.

The Purchasing Act also specifies that all "purchases of supplies, materials, equipment and contractual services, and all contracts for the lease or rental of equipment . . . shall be based wherever possible on competitive bids." *See* Tenn. Code Ann. § 5-14-108(a)(1) (2015). In addition, all such contracts are to be "approved as to form by the county attorney, and the original copy of each long-term contract shall be filed with the county clerk." *See* Tenn. Code Ann. § 5-14-108(j).

Ms. Cotham's assertions regarding the Purchasing Act's applicability focus on the initial portion of the first sentence in Tennessee Code Annotated § 5-14-105(1), which states that the county purchasing agent has the exclusive power to "[c]ontract for and purchase all supplies, materials, equipment and contractual services required by each and every official, agency, office, department or employee of the county government, or that is supported by, or under control of, the county government . . . ." *See id*. Ms. Cotham's argument fails to consider the final phrase of that sentence, however, requiring that the contract be one which "expends or encumbers any of the county's funds." *See id*. We note that the final phrase is joined to the preceding phrases by the conjunction, "and." *See id*. As our Supreme Court has explained, "statutory phrases separated by the word 'and' are usually to be interpreted in the conjunctive." *Stewart v. State*, 33 S.W.3d 785, 792 (Tenn. 2000) (citing *Tenn. Manufactured Hous. Ass'n v. Metro. Gov't of Nashville*,

798 S.W.2d 254, 257 (Tenn. Ct. App.1990) (stating that the word "'and' is a conjunctive article indicating that the portions of the sentence it connects should be construed together"))). Because no County funds were encumbered or expended based on the Contract Extension, the requirement contained in the final phrase of subsection -105(1) concerning the Purchasing Act's applicability has not been met.

In this matter, the original contract executed by Securus and the County in 2008 stated that Securus would provide telephone services for inmates, referred to in the agreement as "certain inmate-related services and applications (the 'Application(s)')." The agreement provided that the County was granting to Securus:

> the right and license to install, maintain, and derive revenue from the Applications through our inmate systems (including, without limitation, the related hardware and software) (the "System") located in and around the inmate confinement facilities identified on the Schedules (the "Facilities"). You are responsible for the manner in which you use the Applications. Unless expressly permitted by a Schedule or separate written agreement with us, you will not resell the Applications or provide access to the Applications (other than as expressly provided in a particular Schedule), directly or indirectly, to third parties. During the term of this Agreement and subject to the remaining terms and conditions of this Agreement, Provider shall be the sole and exclusive provider of inmate related communications, including but not limited to voice, video and data (phone calls, video calls, messaging, and e-mail) at the Facilities in lieu of any other third party providing such inmate communications . . . .

The agreement further provided that Securus would pay the County a 43% commission on all revenue generated by inmates' collect calls and a 30% commission on all revenue generated from the sale of prepaid calling cards.

The Contract Extension provided for a continuation of the same calling services provided by Securus with an increase in the above commission rates paid to the County. Pursuant to the Contract Extension, the County was to receive a 57% commission on all revenue generated by inmates' collect calls and a 50% commission on all revenue generated from the sale of prepaid calling cards. Ergo, under both the original contract and the Contract Extension, the County was not obligated to pay Securus anything, such that no funds of the County were being "expend[ed] or encumber[ed]." *See* Tenn. Code Ann. § 5-14-105(1).

Additionally, Tennessee Code Annotated § 5-14-108(a)(1) requires that contracts for "purchases of supplies, materials, equipment and contractual services" or contracts for the "lease or rental of equipment" shall be subject to competitive bidding requirements. In this case, however, the Contract Extension was not a "purchase" of supplies, materials,

equipment, or services because nothing was paid by the County. In addition, the County did not agree to lease or rent any of the equipment installed by Securus. Rather, the original contract and the Contract Extension granted Securus "the right and license to install, maintain, and derive revenue" from the equipment Securus installed at the Anderson County Jail. As such, the requirements of Tennessee Code Annotated § 5-14-108(a)(1) concerning the Purchasing Act's applicability also have not been met.

Although our research has not revealed any prior Tennessee cases addressing this precise issue with regard to the applicability of the Purchasing Act to a contract that does not require expenditure of county funds, we do find an opinion from the Office of the Attorney General to be instructive. *See State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995) ("Although opinions of the Attorney General are not binding on courts, government officials rely upon them for guidance; therefore, [the Attorney General's] opinion is entitled to considerable deference."). In 1993, the Attorney General was specifically asked whether "an arrangement under which a county, in exchange for a portion of receipts, allows a phone company to install a phone system in the county jail to be used by inmates and paid for by the recipients of the calls is subject to statutory competitive bidding requirements." *See* Tenn. Op. Atty. Gen. No. 93-02, 1993 WL 349718 (Jan. 11, 1993). After analyzing the Purchasing Act and other statutory provisions, the Attorney General opined that "such an arrangement may fairly be characterized as a lease of county property which is not subject to statutory bidding requirements." *See id*. The opinion concluded that:

> In general, it would appear that an arrangement properly categorized as a service contract would involve the county as purchaser and the service provider as vendor. The provider would furnish specified services to the county in return for payment out of county funds. In such cases, compliance with bidding procedures would enable the county to obtain the necessary services with the most efficient expenditure of county funds. As described to this Office, the contract in question in effect involves services to be provided to county jail inmates and the recipients of their calls. The only county role in the transaction is that of allowing the company to install and service phone equipment in county jail space. The arrangement between the county and the phone company could therefore be fairly characterized as a lease of county property for county fiscal purposes.

*Id*.

Similarly, in the case at bar, the agreement at issue does not require the expenditure or encumbrance of any County funds because the County is not purchasing anything. Rather, the services provided by Securus were completely paid for by inmates or call recipients with Securus paying a commission on such revenue to the County. As the trial court determined, "since this arrangement neither expends nor encumbers any of

Anderson County's funds, the County Purchasing Act of 1957 does not apply." We agree with the trial court's conclusion that the Contract Extension was not subject to the requirements of the Purchasing Act.

## V. TFCA Claims

Ms. Cotham contends that the trial court erred by determining that she had failed to plead allegations of fraud with sufficient particularity so as to state a claim under the TFCA. As this Court has previously elucidated:

> The General Assembly enacted the TFCA in 2001, *see* 2001 Pub. Acts, Ch. 367 (H.B. 779), "establish[ing] penalties for filing false claims with state, county, or municipal governments." *State ex rel. Landenberger v. Project Return, Inc*., No. M2007-02859-COA-R3-CV, 2009 WL 637122, at *3 (Tenn. Ct. App. Mar. 11, 2009). "In addition to authorizing the attorney general and reporter and local prosecuting authorities to investigate and prosecute actions under the TFCA, the act allows a complaint to be filed by a private person or qui tam plaintiff." *Id*. (citing Tenn. Code Ann. § 4-18-104). As our Supreme Court has explained:
>
> > The Tennessee General Assembly has a long history of enacting statutes authorizing qui tam actions. For more than two centuries, it followed the traditional approach of enacting statutes providing a bounty to private plaintiffs who filed qui tam actions to enforce specific statutes while declining to adopt a generalized false claims provision similar to the Federal False Claims Act. However, in 2001, the General Assembly enacted the False Claims Act which, like its federal counterpart, targeted a much broader array of fraudulent activity perpetrated against state and local governments. Just as Congress did, the General Assembly provided a statutory jurisdictional bar that is intended to encourage private citizens to assist state and local government in ferreting out fraud but, at the same time, to prevent parasitic plaintiffs from piggybacking on public disclosures of fraud to bring qui tam actions.
>
> *Knox Cnty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc*., 350 S.W.3d 511, 522-23 (Tenn. 2011) (footnotes omitted).

*City of Chattanooga ex rel. Lepard v. Elec. Power Bd. of Chattanooga*, No. E2015-01995-COA-R3-CV, 2016 WL 6124118, at *2 (Tenn. Ct. App. Oct. 20, 2016).

The TFCA is codified at Tennessee Code Annotated § 4-18-101 (2015), *et seq.* As pertinent here, Tennessee Code Annotated § 4-18-103 (2015) provides:

(a)     Any person who commits any of the following acts shall be liable to the state or to the political subdivision for three (3) times the amount of damages that the state or the political subdivision sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the state or to the political subdivision for the costs of a civil action brought to recover any of those penalties or damages, and shall be liable to the state or political subdivision for a civil penalty of not less than two thousand five hundred dollars ($2,500) and not more than ten thousand dollars ($10,000) for each false claim:

    (1)     Knowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval;

    (2)     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

    (3)     Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision;

    (4)     Has possession, custody, or control of public property or money used or to be used by the state or by any political subdivision and knowingly delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt;

    (5)     Is authorized to make or deliver a document certifying receipt of property used or to be used by the state or by any political subdivision and knowingly makes or delivers a receipt that falsely represents the property used or to be used;

    (6)     Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property;

(7)     Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision;

(8)     Is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim; or

(9)     Knowingly makes, uses, or causes to be made or used any false or fraudulent conduct, representation, or practice in order to procure anything of value directly or indirectly from the state or any political subdivision.

Tennessee Code Annotated § 4-18-102 (2015) defines a "claim" as:

[A]ny request or demand for money, property, or services made to any employee, officer, or agent of the state or of any political subdivision, or to any contractor, grantee, or other recipient, whether under contract or not, if any portion of the money, property, or services requested or demanded issued from, or was provided by, the state, referred to in this chapter as "state funds" or by any political subdivision thereof, referred to in this chapter as "political subdivision funds" . . . .

In her amended complaint, Ms. Cotham alleged, *inter alia*, violations of Tennessee Code Annotated § 4-18-103(a)(1)-(3), specifically that Securus presented "a false claim for payment of the fees it retained" pursuant to the Contract Extension and that Securus and Mr. Yeager made and used a false record to get such false claim paid by the County, thereby conspiring to defraud the County. Based on our thorough review of these statutory provisions, we conclude that because there was no request or demand for money, property, or services made by any defendant to the County seeking payment from County funds, the first three listed violations cannot be proven in this matter. *See* Tenn. Code Ann. § 4-18-103(a)(1)-(3). Furthermore, the amended complaint contains no allegation that any of the defendants committed the violations listed in subsections (4) through (6). *See* Tenn. Code Ann. § 4-18-103(a)(4)-(6).

With respect to the violations listed in Tennessee Code Annotated § 4-18-103(a)(7)-(9), Ms. Cotham alleged that Mr. Yeager knowingly made or caused to be made a false record or statement "to conceal, avoid or decrease Securus's obligation to pay or transmit money collected from inmates" to the County in violation of Tennessee Code Annotated § 4-18-103(a)(7). Ms. Cotham also alleged that if Securus did not know

- 11 -

that the Contract Extension was "illegal" at the time it was executed, Securus had violated Tennessee Code Annotated § 4-18-103(a)(8) by failing to disclose the "false claim" to the County within a reasonable time following discovery of the falsity. Ms. Cotham made no allegation that Tennessee Code Annotated § 4-18-103(a)(9) had been violated.

Tennessee Code Annotated § 4-18-103(a)(7) requires proof that a defendant has "[k]nowingly ma[de], use[d], or cause[d] to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision." Similarly, subsection (a)(8) requires proof that "a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim." The TFCA does not expressly define what constitutes a "false record or statement" or a "false claim." *See* Tenn. Code Ann. § 4-18-102 (containing definitions of terms used in statutory scheme).

The trial court relied upon a federal court decision construing the similar federal False Claims Act, codified at §§ 31 U.S.C. 3729-3733, to define the term "false" as used in the state statute. As our Supreme Court has instructed, however, the "proper starting point for construing [the provisions of the TFCA] . . . must begin with the words of the state statute" rather than looking to federal decisions. *See Knox Cty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d 511, 524 (Tenn. 2011). The High Court further elucidated that in order to "ascertain and to give the fullest possible effect to the General Assembly's intent and purpose," courts must "(1) give [the words used in the statute] their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended that each word be given full effect." *Id.* Accordingly, although the statute does not specifically define the word "false," we find it appropriate to give the word its natural and ordinary meaning, *see id.*, rather than relying upon federal court decisions to define it.

"False" is generally defined as something that is "untrue," "deceitful," or "not genuine; inauthentic." BLACK'S LAW DICTIONARY 635 (8th ed. 2004). We find support for this meaning in the TFCA's provisions, which define the term "knowingly" as acting in deliberate ignorance or reckless disregard of the "truth or falsity" of information. *See* Tenn. Code Ann. § 4-18-102(2)(A)(ii)-(iii). The juxtaposition of the terms, "truth" and "falsity," in the statute demonstrate that "false" should, with respect to the TFCA, be defined as the opposite of true.

In this matter, Ms. Cotham's contentions regarding violations of the TFCA by defendants are entirely dependent upon her assertion that the Contract Extension ran afoul of the Purchasing Act's requirements, such that all commissions paid to the County thereunder or even the defendants' reliance upon the Contract Extension as a legally

binding document should be considered "false." The allegations contained in Ms. Cotham's amended complaint were that (1) Mr. Yeager, by executing the Contract Extension, knowingly made or caused to be made a false record or statement in order to decrease Securus's obligation to pay money to the County and (2) if Securus did not know that the Contract Extension was "illegal" at the time it was executed, Securus had violated the TFCA by failing to disclose the "false claim," the Contract Extension, to the County within a reasonable time following discovery of the falsity. As such, the only "falsity" alleged is that the Contract Extension was violative of the Purchasing Act's provisions and therefore unlawful. Having determined that the Purchasing Act was not applicable to the Contract Extension, however, we conclude that none of Ms. Cotham's claims of TFCA violations can stand. *See, e.g., Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1997) (explaining that, pursuant to a motion to dismiss, although courts must "construe the allegations in the plaintiff's favor and accept allegations of fact as true," "the inferences to be drawn from the facts or the legal conclusions set forth in a complaint are not required to be taken as true.").

In her appellate brief, Ms. Cotham relies upon a federal court decision construing the federal False Claims Act, which explains the required elements of a claim under the portion of the federal act at issue as follows:

> (1) that the defendant make a false statement or create a false record with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; (2) that the defendant have submitted a claim for payment to the federal government; (3) that the defendant's false statement have been made with the purpose of getting a false or fraudulent claim paid or approved by the Government; and (4) that the false statement or record have been material to the Government's decision to make the payment sought in the defendant's claim.

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505, 509 (6th Cir. 2010). Assuming, *arguendo*, that the same requirements listed above for a claim made pursuant to the federal False Claims Act would also apply to a claim made pursuant to the state statute, Ms. Cotham's claims would fail nonetheless because no defendant in this action submitted a claim for payment to the County or made a false statement for the purpose of getting such a claim paid.

Ms. Cotham also alleges that the defendants violated the TFCA by making an implied false certification that the Contract Extension complied with the requirements of the Purchasing Act. Having determined that the Purchasing Act is not applicable to the Contract Extension, we determine that no such violation could have occurred. Although Ms. Cotham alleges fraud and deceit in the defendants' execution of the Contract Extension without complying with the Purchasing Act, such allegation cannot be proven

when the execution of the Contract Extension was not subject to the requirements of the Purchasing Act.

Ms. Cotham further alleges that the defendants conspired together to have false claims paid pursuant to the Contract Extension. Relying upon a federal court decision, *U.S. ex rel. Augustine v. Century Health Servs., Inc*., 136 F. Supp. 2d 876, 888 (M.D. Tenn. 2000), Ms. Cotham concedes that one requirement of such a claim is that a defendant "made a claim, or made a statement in order to get the Government to pay money on a claim." *See id*. Again, assuming, *arguendo*, that the actions described in the federal case would be violative of the TFCA, because no claim for payment was made in this case, such a violation cannot be proven.

Accepting Ms. Cotham's allegations of fact as true, we conclude that Ms. Cotham failed to present facts sufficient to support her claims under the TFCA. We therefore affirm the trial court's determination that Ms. Cotham's amended complaint failed to state a claim upon which relief could be granted.

## VI.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment dismissing Ms. Cotham's claims. Costs on appeal are assessed to the appellant, Pamela Cotham. This case is remanded to the trial court for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE